STATE OF NEBRASKA, APPELLEE, V.
JAMIE EARL MOWELL, APPELLANT.

672 N.W.2d 389

Filed December 12, 2003.   No. S-03-009.

84

Sean J. Brennan for appellant.

Jon Bruning, Attorney General, and Kevin J. Slimp for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Jamie Earl Mowell was found guilty by a jury of second degree murder, use of a deadly weapon to commit a felony, and being a felon in possession of a firearm, in association with the shooting death of Jeremy Cade. After a motion for new trial was overruled, the district court sentenced Mowell to a term of imprisonment and Mowell appealed. This appeal involves Mowell's challenges to a number of the court's procedural and evidentiary rulings, as well as his challenges to the instructions given to the jury and the sufficiency of the evidence that led to his second degree murder conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

The evidence at trial revealed that in February 2002, Cade and Calvin Secrest were both residing at the Salvation Army's residential treatment facility in Lincoln, Nebraska. They became close friends and eventually left the treatment facility together. After leaving the treatment facility, Cade and Secrest began to spend a significant amount of time with Mowell. Cade's relationship with Mowell was often rocky and violent and essentially revolved around drug sales and drug use.

In the early afternoon of March 18, 2002, Cade and Secrest went to Mowell's apartment in search of methamphetamines (meth). They were driven to the apartment by Cade's girl friend, Angela Kosmicki. Upon arrival, Cade and Secrest went into Mowell's apartment, while Kosmicki stayed in the car. Secrest

testified that Mowell welcomed them into the apartment, but Mowell testified that he had told Cade not to come to his apartment, and only let Cade and Secrest in because he believed the knock at the door was from someone else.

In any event, Cade and Secrest entered the apartment, and shortly thereafter, Secrest asked Kosmicki to join them inside. According to Secrest, Mowell stated that he was "really high" and asked Kosmicki to take Secrest to a grocery store to purchase a bag of syringes so they would be able to inject meth. At the time he left, Secrest stated that Cade and Mowell were getting along fine. Kosmicki, however, testified that Cade repeatedly requested meth from Mowell and that Mowell told Cade no, and to "back off" because he was too high.

Mowell testified that he wanted Cade and Secrest to leave his apartment, and repeatedly asked them to do so. According to Mowell, Cade refused and made repeated demands for meth. Mowell testified that after Secrest and Kosmicki left, Cade continued to demand meth, and an argument ensued because Mowell refused to provide Cade with meth. During this argument, Mowell claims that Cade repeatedly threatened him and stated that he was going to kill him. Mowell testified that he became scared and eventually gave Cade his remaining batch of meth. Moreover, Mowell stated that he offered to give Cade his compact disc player, personal digital assistant, and a scale for weighing meth. Cade, however, was not satisfied and, according to Mowell, continued to demand more meth, saying "this ain't over." At this time, two or three additional unidentified people entered Mowell's apartment.

According to Secrest, when he and Kosmicki returned, Cade was sitting across a small table from Mowell. Thereafter, Mowell began to break up "rocks" of meth. The recent entrants into the apartment then asked Mowell for syringes and went into Mowell's bathroom to use drugs.

At this point, the testimony of various witnesses differs in several respects. Secrest testified that while breaking up the rocks of meth, Mowell pulled out his gun, pointed it at Cade for a few seconds, and then shot him. Secrest testified that prior to the shooting, he did not hear any verbal exchange or argument between Cade and Mowell, nor was anyone standing or being loud.

Moreover, Secrest stated that just prior to the shooting, Cade was looking at the floor with his hands on his lap and that Cade only looked up after the gun was pointed at him. Secrest also testified that Cade made no movements toward Mowell while the gun was pointed at him. During cross-examination, however, Secrest admitted that Mowell and Cade were talking immediately prior to the shooting and that Secrest had previously told the police that he heard Cade threaten to kill Mowell just prior to the shooting.

Kosmicki testified that prior to the shooting, Cade was complaining about the amount of meth Mowell gave him. Kosmicki also testified that Cade, while looking down at the drugs, stated that if the amount of drugs Mowell had given him was not enough, then he would kill Mowell. At that point, according to Kosmicki, Mowell pointed his gun at Cade. Kosmicki then told Cade not to worry because Mowell "is just fucking with you." A few seconds later, Kosmicki testified, the gun went off.

Mowell also testified that Cade continued to demand more meth and that he became angrier and more vocal with each demand. Mowell stated that the dispute culminated when Cade told him that "if this is not enough, I am going to kill you." Mowell testified that in response to this threat, he grabbed his gun, pointed it at Cade, and told him to leave. Mowell stated that Cade told him to go ahead and shoot and then made another threat on his life. According to Mowell, Kosmicki then said something which diverted his attention from Cade. Mowell testified that when he turned his attention back to Cade, Cade was moving toward him and reaching for the gun. Mowell stated that he pulled the trigger once, but only to stop Cade.

According to Secrest, after the shot was fired, Cade got up as if to beat up Mowell. Kosmicki also testified that Cade, after getting shot, moved toward Mowell as if he wanted to "kick [Mowell's] ass." Seeing Cade move toward him aggressively, Mowell ran out of the apartment. Kosmicki, Crystal Walsh (Mowell's girl friend who was in the bedroom throughout the incident), and the persons in the bathroom then left the apartment. According to Secrest, shortly after leaving, Mowell returned to the apartment and grabbed his backpack. Mowell testified that he returned to the apartment to call his mother, but only managed to grab his backpack before leaving the apartment.

Once downstairs, Walsh, Secrest, and Mowell jumped inside Kosmicki's car. Kosmicki then drove approximately one block to a nearby service station. After parking, Kosmicki told Mowell and Walsh to get out of the car. Secrest went to the pay telephone and dialed the 911 emergency dispatch service, while Mowell and Walsh proceeded up the alley behind the service station. Kosmicki drove Secrest back to the apartment so he could wave down the police and ambulance. Thereafter, Kosmicki returned to her home.

Mowell and Walsh eventually traveled to Sioux City, Iowa. Eleven days later—March 19, 2002—they were arrested by the Sioux City Police Department while coming out of a motel room in Sioux City. At the time of the arrest, Mowell had a black and yellow backpack in his possession.

Cade was pronounced dead on March 18, 2002, at 3:52 p.m. Along with the fatal gunshot wound to the chest, Cade suffered an injury to his right thumb. Expert testimony established that a bullet struck Cade's thumb before going through his sternum, pericardial sac, aorta, and right lung. The bullet eventually lodged in one of his ribs. The distance between the gun and Cade's shirt was approximately 3 to 5 feet when the gun was fired, and Cade's thumb was between 12 and 18 inches from the gun when it was hit by the bullet.

On May 22, 2002, Mowell was arraigned on information and charged with first degree murder (count I), use of a deadly weapon to commit a felony (count II), and being a felon in possession of a firearm (count III). Prior to trial, Mowell filed a motion to sever, requesting that the court try count III separately from counts I and II. A hearing on the motion was held September 5, and the court denied the motion on September 6.

The trial commenced on October 1, 2002. At trial, Mowell objected to the receipt of a number of exhibits, including exhibits 93 through 96 and 100. These exhibits were a few of the writings and drawings that were found in the notebooks inside of Mowell's backpack the day of his arrest. Mowell argued the exhibits were irrelevant, cumulative, and unfairly prejudicial. The trial court overruled Mowell's objections and admitted the exhibits into evidence.

After the State rested, Mowell moved to dismiss the charges. That motion was overruled. At the close of all the evidence, Mowell renewed his motion to dismiss, but the motion was overruled.

A formal jury instruction conference was held on October 10, 2002. The trial court's proposed jury instructions were discussed, and Mowell objected to instruction No. 4. Mowell's primary objection was in regard to the step instruction. Under the step instruction, the jury was instructed to separately consider the crimes of first degree murder, second degree murder, and manslaughter. The instruction stated that the crimes were to be considered in descending order, and only if the jury found the State had failed to prove first degree murder could the jury consider second degree murder, and so on. Essentially, Mowell argued that the jury should have been able to consider the three choices—first degree murder, second degree murder, and manslaughter—in any order. The trial court overruled Mowell's objection.

Mowell also tendered his own instructions. Relevant here, Mowell requested a choice of evils instruction, arguing that a felon should maintain the right of self-defense, including the right to possess a firearm. The court refused to give Mowell's proposed instruction.

On October 11, 2002, Mowell was found guilty by jury verdict of second degree murder, use of a deadly weapon to commit a felony, and being a felon in possession of a firearm. Mowell was sentenced to a term of (1) from 40 years' to life imprisonment for second degree murder; (2) from 10 to 20 years' imprisonment for use of a deadly weapon to commit a felony, to be served consecutively to the second degree murder sentence; and (3) from 5 to 10 years' imprisonment for being a felon in possession of a firearm, to be served concurrently with the sentence for count II.

Thereafter, Mowell filed a timely motion for a new trial. Mowell made three arguments: (1) The court should have instructed the jury on the legal definition and meaning of " 'sudden quarrel' " and " 'provocation,' " (2) the prosecuting attorney made improper comments during closing arguments, and (3) the court should not have admitted certain exhibits taken from

Mowell's backpack into evidence. The district court overruled this motion, and Mowell timely filed his notice of appeal.

## ASSIGNMENTS OF ERROR

Mowell assigns, restated, that the trial court erred by (1) failing to instruct the jury on the meaning and legal definition of provocation and sudden quarrel, (2) denying his motion for a new trial, (3) refusing to give his proposed jury instruction No. 4, (4) overruling his objections to exhibits 93 through 96 and 100, (5) denying his motion to sever count III, and (6) accepting the jury's verdicts in that there was insufficient evidence to prove beyond a reasonable doubt that he intentionally killed another person and that he was not acting in self-defense.

## STANDARD OF REVIEW

■ Whether jury instructions given by a trial court are correct is a question of law. *State v. Bao*, 263 Neb. 439, 640 N.W.2d 405 (2002).

■ In an appeal based on a claim of erroneous jury instructions, the appellant has the burden to show that the questioned instructions were prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Gartner*, 263 Neb. 153, 638 N.W.2d 849 (2002).

■ To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Brouillette*, 265 Neb. 214, 655 N.W.2d 876 (2003).

■ In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion. *State v. McPherson*, 266 Neb. 715, 668 N.W.2d 488 (2003).

■ When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an

appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Faber*, 264 Neb. 198, 647 N.W.2d 67 (2002).

## ANALYSIS

### PROVOCATION AND SUDDEN QUARREL

Mowell argues the trial court erred by failing to define the term "sudden quarrel," which he contends prevented the jury from adequately considering an essential issue presented by the evidence. Jury instruction No. 4, the step instruction, provided the analytical framework for the jury to decide counts I, II, and III, including the elements of the charged crimes. With respect to count I, the jury was instructed that it could return one of four possible verdicts: (1) guilty of murder in the first degree, (2) guilty of murder in the second degree, (3) guilty of manslaughter, or (4) not guilty. Relevant here, the pertinent portions of instruction No. 4 gave the following charge:

> The material elements that the [S]tate must prove . . . in order to convict the Defendant of [second degree] murder . . . are:
>
> 1. That the Defendant caused the death of Jeremy Cade; and
>
> 2. That the Defendant did so intentionally but without premeditation; and . . .
>
> . . . .
> 4[.] That he did not do so in self defense.
>
> . . . .
> The material elements that the [S]tate must prove . . . in order to convict the Defendant of manslaughter are:
>
> 1. That the Defendant killed Jeremy Cade; and
>
> 2. That the Defendant did so without malice, either upon a sudden quarrel, or unintentionally while in the commission of an unlawful act; and . . .
>
> . . . .
> 4. That he did not do so in self defense.

According to Mowell, trial courts should be required to define the term "sudden quarrel" because it is not only an essential element of manslaughter, but understanding the term "sudden

quarrel" is an essential component of allowing the jury to effectively consider whether Mowell had the requisite intent to commit murder. More specifically, Mowell argues that a proper understanding of the term sudden quarrel at an early stage of the step instruction would have led the jury to find a sudden quarrel erupted between Mowell and Cade prior to the shooting. In turn, this could have negated Mowell's intent to kill Cade and caused the jury to find Mowell guilty of manslaughter instead of murder.

Whether jury instructions given by a trial court are correct is a question of law. *State v. Bao*, 263 Neb. 439, 640 N.W.2d 405 (2002). Regarding questions of law, an appellate court is obligated to reach a conclusion independent of determinations reached by the trial court. *State v. Mata*, 266 Neb. 668, 668 N.W.2d 448 (2003). In an appeal based on the claim of an erroneous instruction, the appellant has the burden to show that the questioned instruction was prejudicial to or otherwise adversely affected a substantial right of the appellant. *State v. Derry*, 248 Neb. 260, 534 N.W.2d 302 (1995).

We first note that Mowell's assignment of error is not appropriate for appellate review because he failed to object to the portion of the jury instruction he now criticizes. At the instruction conference, Mowell objected to certain aspects of instruction No. 4, but he did not specifically object to the trial court's failure to define "sudden quarrel," or to its absence in instruction No. 7, which provided definitions to the terms used throughout the instructions.

Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error indicative of a probable miscarriage of justice. *State v. Haltom*, 264 Neb. 976, 653 N.W.2d 232 (2002). The purpose of the instruction conference is to give the trial court an opportunity to correct any errors made by it. *Id.* Consequently, a party who does not request a desired jury instruction cannot complain on appeal about incomplete instructions. *State v. Brown*, 258 Neb. 330, 603 N.W.2d 419 (1999). Stated otherwise, and relevant here:

> " '[I]t is the duty of the trial court, without any request to do so, to instruct the jury on the issues presented by the pleadings and supported by the evidence. . . .

"'In applying that principle we have established that the failure to object to instructions after they have been submitted to counsel for review or to offer more specific instructions if counsel feels the court-tendered instructions are not sufficiently specific will preclude raising an objection on appeal, unless there is a plain error indicative of a probable miscarriage of justice.'"

*State v. Myers*, 258 Neb. 300, 314, 603 N.W.2d 378, 390 (1999) (quoting *Ellis v. Guy Advg. v. Cohen*, 219 Neb. 340, 363 N.W.2d 180 (1985)). Accord *McCauley v. Briggs*, 218 Neb. 403, 355 N.W.2d 508 (1984). Thus, in order to preserve the alleged error, Mowell was required to specifically object to that error. See *State v. Davlin*, 263 Neb. 283, 639 N.W.2d 631 (2002) (objection, based on specific ground and properly overruled, does not preserve appellate review on any other ground).

However, as noted, an appellate court always reserves the right to note plain error which was not complained of at trial. *Id.* We have defined plain error as "error of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process." *State v. Greer*, 257 Neb. 208, 215, 596 N.W.2d 296, 302 (1999). Here, there was no miscarriage of justice because the jury found Mowell guilty of second degree murder under a properly administered step instruction.

Under the step instruction, the jury was instructed to separately consider, in the following order, the crimes of first degree murder, second degree murder, and manslaughter. The jury was adequately instructed on the element of intent with respect to the crime of second degree murder such that any alleged failure to further define the term "sudden quarrel" at an earlier stage of the step instruction would not constitute plain error under these circumstances. We have repeatedly approved of step instructions that require consideration of the most serious crime charged before the consideration of lesser-included offenses. See, generally, *State v. Bao*, 263 Neb. 439, 640 N.W.2d 405 (2002); *Myers, supra*; *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998); *State v. Derry*, 248 Neb. 260, 534 N.W.2d 302 (1995). The jury was so charged under a properly administered step instruction in the instant case, and we refuse to invoke the

plain error doctrine to give Mowell's first assignment of error any further consideration.

Likewise, Mowell's second assignment of error with respect to the denial of his motion for new trial, which is predicated on the court's failure to define the term "sudden quarrel," is without merit.

### CHOICE OF EVILS DEFENSE

Mowell was found guilty of being a felon in possession of a firearm in violation of Neb. Rev. Stat. § 28-1206 (Reissue 1995). According to Mowell, the evidence at trial established that Cade had placed him in fear of his life, and under Neb. Rev. Stat. § 28-1407 (Reissue 1995), the jury should have been presented with a choice of evils instruction, whereby they could have found his possession of a firearm necessary, i.e., lawful, under the circumstances. In other words, Mowell argues that § 28-1206 is subject to the choice of evils defense found in § 28-1407.

In delineating the scope and applicability of § 28-1407, we have stated the statute reflects the Nebraska Legislature's policy that certain circumstances legally excuse conduct that would otherwise be criminal. *State v. Cozzens*, 241 Neb. 565, 490 N.W.2d 184 (1992). The defense requires that a defendant (1) acts to avoid a greater harm; (2) reasonably believes that the particular action is necessary to avoid a specific and immediate harm; and (3) reasonably believes that the selected action is the least harmful alternative to avoid the harm, either actual or reasonably believed by the defendant to be certain to occur. *State v. Wells*, 257 Neb. 332, 598 N.W.2d 30 (1999); *Cozzens, supra.*

Mowell presented such an instruction to the trial court. However, believing *State v. Harrington*, 236 Neb. 500, 461 N.W.2d 752 (1990), *disapproved on other grounds, State v. Woodfork*, 239 Neb. 720, 478 N.W.2d 248 (1991), was controlling, the trial court refused to give Mowell's proposed instruction. To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Brouillette*, 265 Neb. 214, 655 N.W.2d 876 (2003).

Assuming for argument's sake that Mowell's tendered instruction is a correct statement of the law, we must determine whether a choice of evils defense is applicable to a violation of § 28-1206. Nebraska law explicitly and unequivocally prohibits a felon from being in possession of a firearm. See § 28-1206. Noting that no exceptions appear on the face of the statute, we have held that a felon who possesses a firearm for allegedly self-defense purposes is guilty of violating § 28-1206. *Harrington, supra.*

In *Harrington*, the defendant was convicted of being a felon in possession of a firearm in violation of § 28-1206(1). At trial, the defendant testified that he carried a firearm because a gang had repeatedly threatened his life. Based on this evidence, the defendant requested that the trial court instruct the jury that the State must prove his possession of the firearm was not for the purpose of security or defense. The court refused to issue the instruction, and we affirmed on appeal. We stated:

> [Section] 28-1206(1) makes it a crime for a convicted felon to possess a firearm. There is no exception for a convicted felon who believes he may need a firearm for self-defense, and the defendant violated that statute by being in possession of a firearm. His possession of the firearm for allegedly self-defense purposes did not excuse or justify his violation of the statute. Since the statute creates no right for a felon to possess a firearm for self-defense, it was unnecessary to instruct the jury as requested by the defendant.

*Harrington*, 236 Neb. at 502, 461 N.W.2d at 754.

We are faced with a slightly different issue in this case because the defendant's proposed instruction in *Harrington* was not based on a choice of evils defense under § 28-1407. Furthermore, as Mowell notes, some courts have crafted exceptions to their felony possession statutes which allow for variations on the choice of evils defense in *very* limited circumstances. See, generally, *U.S. v. Paolello*, 951 F.2d 537 (3d Cir. 1991) (recognizing defense where, during bar altercation, defendant knocked gun from attacker's hand to prevent him from shooting defendant's stepson and then picked up gun from floor to prevent attacker from retrieving it); *United States v. Panter*, 688 F.2d 268 (5th Cir. 1982) (recognizing defense where defendant, pinned to floor after being stabbed in abdomen, reached under bar for club and instead retrieved pistol);

*Vasquez v. State*, 830 S.W.2d 948 (Tex. Crim. App. 1992) (recognizing defense where defendant presented evidence that he grabbed firearm from kidnappers in attempt to free himself).

■ Without ruling on a limited availability of a choice of evils-type justification defense to the charge of being a felon in possession of a firearm, we conclude that under the facts of this case, Mowell was not entitled to such an instruction. When examining justification or choice of evils defenses, this court has repeatedly stated that the action taken must be "necessary to avoid a specific and immediately imminent harm." *State v. Cozzens*, 241 Neb. 565, 571, 490 N.W.2d 184, 189 (1992). Stated otherwise, generalized and nonimmediate fears are inadequate grounds upon which to justify a violation of law. See *State v. Graham*, 201 Neb. 659, 271 N.W.2d 456 (1978). See, also, *Cozzens, supra.*

A review of the evidence shows that although Cade and Mowell had a rocky and violent relationship, Mowell was not facing immediate harm when he first obtained the firearm, nor later when he obtained the firearm again, shortly before Cade's death. Mowell stated he originally obtained the firearm a few weeks prior to Cade's death. He stated he obtained the firearm because Cade told him that "someone" inside of the gang was going to die. However, this statement was so vague that it could not have triggered more than a generalized fear for his safety. Moreover, a few days after obtaining the firearm, Mowell testified that he pointed the firearm at Cade because Cade was demanding meth. The same night, however, Mowell returned the firearm to his friend.

Mowell was in possession of the firearm again, 2 days prior to Cade's death. Mowell testified that he reobtained the firearm because Cade believed that Mowell had cheated him in a drug transaction. Mowell testified that his fear was based on Cade's statement that "it's not over" prior to his leaving Mowell's apartment the night of the drug transaction. However, Cade made no specific and immediate threat to Mowell, and the vague statement, "it's not over," is insufficient to establish more than a generalized and nonimmediate fear of harm. The true nature of Mowell's possession of the firearm is aptly demonstrated by examining the day of Cade's death. Mowell testified that on the afternoon of March 18, 2002, he was sitting with the firearm by

his side even though he did not think Cade was coming to the apartment. Such circumstances, both leading up to and on March 18, conclusively demonstrate that Mowell's possession of the firearm was without justification under the law.

Furthermore, even if Mowell felt threatened and harassed by Cade to a point where he feared for his safety, Mowell had ample opportunity to go to the police, request a restraining order, or stop associating with Cade. See *Graham, supra* (time to explore other viable alternatives is relevant factor in analyzing justification defense). See, also, *U.S. v. Bell*, 214 F.3d 1299 (11th Cir. 2000); *U.S. v. Rice*, 214 F.3d 1295 (11th Cir. 2000); *U.S. v. Lomax*, 87 F.3d 959 (8th Cir. 1996). There is simply no evidence that shows Mowell was facing a specific and immediate threat when he obtained the firearm; thus, even if we assume that § 28-1206 could modify § 28-1407 under certain limited circumstances, the trial court did not err by refusing to give the instruction in the instant case.

Lastly, Mowell argues that the denial of his proposed jury instruction was unconstitutional because it deprived him of his right to defend himself under Neb. Const. art. I, § 1. This argument is without merit. Mowell cannot predicate constitutional error on the failure to give an instruction on a factually inapplicable defense. Moreover, to the extent Mowell argues that the right to bear arms trumps § 28-1206, we have previously found § 28-1206 to be a reasonable, and constitutional, restriction on the right to bear arms. See, *State v. Harrington*, 236 Neb. 500, 461 N.W.2d 752 (1990), *disapproved on other grounds, State v. Woodfork*, 239 Neb. 720, 478 N.W.2d 248 (1991); *State v. Comeau*, 233 Neb. 907, 448 N.W.2d 595 (1989).

### EXHIBITS 93 THROUGH 96 AND 100

Mowell also argues that the trial court erred by admitting exhibits 93 through 96 and 100. These exhibits are some of the writings found in Mowell's backpack at the time of his arrest. Generally speaking, they can be read as admissions by Mowell that he killed Cade and that he had no remorse for doing so.

As an initial matter, the State argues that Mowell's objections to these exhibits were not sufficiently specific to preserve these claims for appellate review. At the time the exhibits were offered,

Mowell's counsel interposed objections "on the basis of the objections that I made previously" and "for the reasons previously stated."

The governing statutory provision states, in relevant part:

(1) Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:

(a) In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, *stating the specific ground of objection, if a specific ground was not apparent from the context* . . . .

(Emphasis supplied.) Neb. Rev. Stat. § 27-103 (Reissue 1995).

A review of the record makes it clear that defense counsel was simply referencing and renewing the more specific objections he had made at a previous hearing where the trial court denied its objections to the exhibits. Moreover, after the court made its ruling at the hearing, counsel for the defense and the trial court had the following colloquy:

[Defense counsel]: When we get started, my understanding [is that the prosecutor] wants to offer all of [the exhibits] and have me object and have you rule on the objection. Is it necessary to restate all of the foundation for the objection?

THE COURT: I think if you want to make a record, I think we could state on the record at this point that the objections you have, have already been expressed and so that the Court of Appeals or Supreme Court, should they ever look at it, don't deprive you of your opportunity to raise that issue. I think that is good enough and not have you go through all of that and have to do it here at side-bar. I wouldn't let you do it in the presence of the jury.

[Defense counsel]: Right. I am concerned about appellate decisions that said, even though you made an objection, you don't make it at the time that it's being offered.

THE COURT: I think you can make it at the time it's being offered, but you don't have to repeat your reasons for it. I think that preserves it. You can simply, for the record, object even though we all know that we have had this discussion.

[Defense counsel]: For the reasons previously stated, I object to these exhibits.

THE COURT: And then you probably ought to — I suppose I will know as we go along which ones are which so I get the right numbers.

Thereafter, the court brought the jury back into the courtroom, and the State called a Lincoln police officer to the stand. During the direct examination of the police officer, the State offered exhibits 93 through 96 and 100. As noted above, the defense made general objections and the trial court admitted the exhibits into evidence over those objections. Because the prior hearing should have made the specific ground of the objections apparent to both the State and the trial court, the State's argument is without merit. See, § 27-103(1)(a); *State v. Richard*, 228 Neb. 872, 424 N.W.2d 859 (1988) (noting objection must be sufficiently specific to enlighten trial court and enable it to pass upon it).

▪ Mowell argues that the exhibits were irrelevant, cumulative, and unfairly prejudicial, and should not have been admitted into evidence at trial. In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion. *State v. McPherson*, 266 Neb. 715, 668 N.W.2d 488 (2003); *State v. Cook*, 266 Neb. 465, 667 N.W.2d 201 (2003). The exercise of judicial discretion is implicit in determinations of relevancy under Neb. Rev. Stat. § 27-401 (Reissue 1995) and prejudice under Neb. Rev. Stat. § 27-403 (Reissue 1995), and a trial court's decision regarding them will not be reversed absent an abuse of discretion. See, *McPherson, supra*; *Cook, supra*; *State v. Dixon*, 240 Neb. 454, 482 N.W.2d 573 (1992).

A review of the exhibits shows that they were neither irrelevant nor unduly prejudicial. "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." § 27-401. These exhibits were relevant to facts at issue in the case. First,

Mowell is simply wrong to suggest that the only issue to be decided in the case was whether Cade's death was a result of a sudden quarrel. At the time the exhibits were offered and received, the State was still attempting to prove the elements of murder. In other words, they were attempting to show that Mowell killed Cade and that he did so intentionally, deliberately, and not in the course of self-defense. Admissions by Mowell that he killed Cade are relevant to these issues. Moreover, the exhibits are relevant to establish Mowell's motive at the time of the killing. Finally, the exhibits have some relevance for what they did not include; namely, they contained no indication that Mowell killed Cade in self-defense.

However, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." § 27-403. Essentially, Mowell argues that the exhibits were prejudicial because they contain callous language about a tragic event and highlight his lack of remorse over killing Cade. However, the key inquiry is not whether the exhibits were prejudicial, but whether they were unduly prejudicial. For "[w]hile most, if not all, evidence offered by a party is 'calculated to be prejudicial to the opposing party,' only evidence tending to suggest a decision on an improper basis is 'unfairly prejudicial.' " *State v. Perrigo*, 244 Neb. 990, 997, 510 N.W.2d 304, 309 (1994). See, also, *State v. Canbaz*, 259 Neb. 583, 611 N.W.2d 395 (2000) (unfair prejudice means undue tendency to suggest decision on improper basis).

Our review of the exhibits leads us to conclude that they were highly relevant to a number of issues and that they were not, as Mowell contends, overly suggestive of the idea that Mowell was guilty because he was a bad person, nor did they constitute a needless presentation of cumulative evidence. The trial court did not abuse its discretion by admitting these exhibits into evidence.

## MOTION TO SEVER

Prior to trial, the defense filed a motion to sever the charge of felon in possession of a firearm from the other counts. The defense argued that joinder would unfairly prejudice Mowell

because the charge illustrated Mowell's prior felony convictions to the jury. The trial court denied the motion, stating, "I am satisfied that whatever prejudice may arise from trying all three counts together can be cured by a jury instruction limiting the purpose for which the Defendant's prior felony may be considered." The trial court, however, gave no such instruction to the jury.

Mowell asserts that the trial court abused its discretion by denying his motion to sever. More specifically, Mowell argues that he was prejudiced by the court's ruling because it allowed the prosecution to create the impression that Mowell was a bad man and, therefore, guilty of murder. Moreover, Mowell argues that the court's failure to properly instruct the jury exacerbated the prejudice.

The authority to join offenses is found in Neb. Rev. Stat. § 29-2002 (Reissue 1995). It provides:

> (1) Two or more offenses may be charged in the same indictment, information, or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
>
> . . . .
>
> (3) If it appears that a defendant or the state would be prejudiced by a joinder of offenses in an indictment, information, or complaint or by such joinder of offenses in separate indictments, informations, or complaints for trial together, the court may order an election for separate trials of counts, indictments, informations, or complaints, grant a severance of defendants, or provide whatever other relief justice requires.

We have held that severance is not a matter of right, and a ruling of the trial court with regard thereto will not be disturbed on appeal absent a showing of prejudice to the defendant. *State v. Evans*, 235 Neb. 575, 456 N.W.2d 739 (1990); *State v. Nance*, 197 Neb. 95, 246 N.W.2d 868 (1976), *disapproved on other grounds, State v. Sanders*, 235 Neb. 183, 455 N.W.2d 108 (1990). When determining if the offenses were properly joined, this court has undertaken a two-stage analysis.

First, we must determine how the offenses are related. If the offenses occurred as part of the "same act or transaction," they are properly joinable under § 29-2002. See, *State v. Illig*, 237 Neb. 598, 467 N.W.2d 375 (1991); *Evans, supra*. Here, because the murder charged in count I was committed with the firearm that was the subject of counts II and III, the events clearly arose out of the same act or transaction. See *Evans, supra*, citing *State v. Fournier*, 554 A.2d 1184 (Me. 1989).

Second, we must determine if joinder was prejudicial to the defendant. See, *Illig, supra*; *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989). Here, joinder was not prejudicial to Mowell because the evidence relating to each offense would have been admissible in a trial of each offense separately. See, *Illig, supra*; *State v. Porter*, 235 Neb. 476, 455 N.W.2d 787 (1990), *disapproved on other grounds, State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991). Simply put, Mowell chose to testify at his trial; therefore, even if count III had been severed, evidence of his prior felony convictions would have been properly admitted to potentially impeach his testimony.

Furthermore, the trial court's failure to instruct the jury on the appropriate use of Mowell's felony record does not merit reversal. Rather, the failure to give such a limiting instruction is simply another factor to consider when determining prejudice. As noted above, prejudice is absent from the record, thus any error committed by the trial court in this regard is harmless.

### SUFFICIENCY OF EVIDENCE

Lastly, Mowell argues that the trial court improperly concluded that the jury's verdicts were supported by sufficient evidence to prove beyond a reasonable doubt that (1) he formed the requisite intent to kill Cade and (2) he was not acting in self-defense.

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Faber*, 264 Neb. 198, 647 N.W.2d 67 (2002). Viewing the evidence, as summarized above, in a light most favorable to the prosecution, we conclude that there was

ample evidence to sustain the conviction of Mowell for second degree murder.

## CONCLUSION

For the foregoing reasons, we affirm Mowell's convictions for second degree murder, use of a deadly weapon to commit a felony, and being a felon in possession of a firearm.

AFFIRMED.

McCORMACK, J., not participating.