IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)


STATE V. AGUILAR


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

ARMANDO G. AGUILAR, APPELLANT.


Filed November 24, 2015.    No. A-15-044.


Appeal from the District Court for Hall County: JAMES D. LIVINGSTON, Judge. Affirmed.

Mark Porto, of Shamberg, Wolf, McDermott & Depue, for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.


MOORE, Chief Judge, and IRWIN and INBODY, Judges.

MOORE, Chief Judge.

### INTRODUCTION

Following a jury trial in the district court for Hall County, Armando Aguilar ("Aguilar") was convicted of driving during revocation, and driving without a valid registration. During trial, the district court denied Aguilar's motion for a directed verdict and denied his request for a "choice of evils" jury instruction. Because we find no error by the district court, we affirm.

### BACKGROUND

Aguilar's convictions arose from a traffic stop on April 7, 2014, in Grand Island, Nebraska. Deputy Sheriff Rhonda Rowe ("Rowe") initiated the traffic stop after observing a vehicle driving in front of her with expired tags, which she confirmed to be expired through a computer system prior to conducting the stop. After activating her emergency lights, Rowe pulled the vehicle over and made contact with the driver. The driver identified himself as Armando Aguilar, and told Rowe that he did not have a driver's license. Aguilar did provide his registration and proof of

- 1 -

insurance to Rowe. Rowe observed that Aguilar's registration was expired. Aguilar stated that he was on his way to get the vehicle registered. Aguilar's three daughters were sitting in the backseat.

Rowe ran Aguilar's information through the emergency center and was advised that Aguilar's license was suspended and revoked and that this was his first offense. Rowe wrote Aguilar a citation after which he and his children walked home. Aguilar was subsequently arrested for the felony offense. Aguilar was charged with driving during revocation, first offense, in violation of Neb. Rev. Stat. § 60-6,197.06, a Class IV felony; and with no valid registration in violation of Neb. Rev. Stat. § 60-362, a Class III misdemeanor.

A jury trial was held before the district court on October 15, 2014. The State offered original and amended certified copies of Aguilar's prior DUI third offense conviction, which were received into evidence without objection. Specifically, these exhibits show that on May 25, 2004, Aguilar was convicted in Hall County District Court of driving under the influence-third offense under Neb. Rev. Stat. § 60-6,196(2)(c) and that Aguilar's driver's license was revoked for a period of 15 years from the date of his release from incarceration. The State also offered a copy of Aguilar's Nebraska Department of Motor Vehicle records into evidence which indicates that the earliest Aguilar could have sought renewal of his driving privileges was late 2018.

Rowe testified regarding the traffic stop and subsequent arrest of Aguilar as outlined above. Following Rowe's testimony, the State rested and Aguilar moved for a direct verdict. Aguilar argued that the State failed to prove that his operator's license had been revoked "pursuant to" § 60-6,196(2)(c) as it existed prior to July 16, 2004. The district court overruled Aguilar's motion for directed verdict after which Aguilar presented evidence.

Aguilar testified about his decision to drive on April 7, 2014. Two of Aguilar's daughters attended elementary school in Grand Island, where they are released from school at 3:05 p.m. Aguilar's wife, Olga, typically picks up their children from school. If Olga is unable to pick up the children, she calls Aguilar and he in turn tries to find another ride for them. An employee of the school testified that during the last two years she has observed Olga picking the children up from school "probably 90 percent of the time" and that she has never seen Aguilar pick the children up from school in a vehicle.

Aguilar further testified that on April 7, 2014, Olga worked late and was unable to pick up the children. He attempted to call other potential drivers, but was unable to find a substitute. Because one of his daughters, Jennifer, had been sick during the week leading up to April 7, 2014, and the weather at the time was rainy, Aguilar decided at 3:00 p.m. to drive and pick his children up from school. The subsequent stop of Aguilar's vehicle occurred at 3:19 p.m.

Aguilar believed that if he had not picked up his children, they would have walked home. He was very worried about Jennifer because of her recent illness, and did not want her to walk home sick. Olga testified that the elementary school is around three to five blocks from the family home, the walk is "far" and "dangerous," and the children never walk to and from school. Olga confirmed that she generally drives the children to school but was unable to pick them up on April 7 due to her working late.

Aguilar offered into evidence a certified copy of records from the U.S. Department of Commerce supporting his factual assertions regarding the weather on the afternoon of April 7, 2014. The climatological data contained in the exhibit indicates that around 3:05 p.m., the Central

Nebraska Regional Airport in Grand Island, Nebraska was experiencing rain and wind gusts around 30 m.p.h. According to the report, the total precipitation around this time amounted to 0.06 inches. Aguilar admitted that the rain had ended around the time that the traffic stop occurred.

Aguilar presented evidence from the school nurse that Jennifer had been sent home from school on March 31, 2014 because she was suffering from cold symptoms. Aguilar chose to send Jennifer to school on April 7 because "she was getting better."

At the close of all evidence and during the jury's recess, Aguilar renewed his motion for a directed verdict, which was again denied by the district court.

At the jury instruction conference, Aguilar requested the inclusion of a "choice of evils" or "justification" jury instruction. Aguilar sought to include this affirmative defense as an element to the driving during revocation charge, requiring the State to prove beyond a reasonable doubt that Aguilar "did not act to avoid a greater harm" in order for the jury to find guilt. Aguilar also sought a corresponding "Choice of Lesser Harm" jury instruction providing the elements necessary to find that Aguilar acted to avoid a greater harm. The court denied both requested instructions based on the following reasoning:

> Based upon the evidence presented, there is not sufficient evidence for the instruction on the lesser harm defense. As a matter of law, that is only given when there's sufficient evidence to show that perhaps an action was taken by the Defendant necessary to avoid a specific and immediate harm, not a generalized fear for his own safety or the safety of others, and also, there's a lack of evidence as to any other viable alternatives to the Defendant driving his motor vehicle contrary to the statutes of the State of Nebraska. I am denying both of those proposed instructions.

Following deliberations, the jury returned a verdict of guilty on both counts. The district court sentenced Aguilar to a period of incarceration of 60 days in the Hall County Department of Corrections for driving during revocation, with credit for one day served. The district court ordered Aguilar's driver's license be revoked for a period of 15 years and ordered Aguilar not to drive a motor vehicle in the State of Nebraska for the same period of time. For the no valid registration charge, the district court ordered Aguilar to pay a fine of $50. Aguilar subsequently perfected this appeal.

## ASSIGNMENTS OF ERROR

Aguilar asserts that the district court erred in (1) overruling Aguilar's motion for a directed verdict and (2) failing to provide the jury with a choice of evils instruction.

## STANDARD OF REVIEW

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed

most favorably to the State, is sufficient to support the conviction. *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011). Stated another way, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Wells*, 290 Neb. 186, 859 N.W.2d 316 (2015).

Whether jury instructions are correct are questions of law, which an appellate court resolves independently of the trial court. *State v. Loyuk*, 289 Neb. 967, 857 N.W.2d 833 (2015). See, also, *State v. Draper*, 289 Neb. 777, 857 N.W.2d 334 (2015); *State v. Edwards*, 286 Neb. 404, 837 N.W.2d 81 (2013).

## ANALYSIS

### MOTION FOR DIRECTED VERDICT

Aguilar asserts that the district court erred in overruling his motion for a directed verdict.

Aguilar was charged with operating a motor vehicle during a revocation period in violation of Neb. Rev. Stat. § 60-6,197.06(1), which provides in part:

> (1) Unless otherwise provided by law pursuant to an ignition interlock permit, any person operating a motor vehicle on the highways or streets of this state while his or her operator's license has been revoked pursuant to section 28-306, section 60-698, subdivision (4), (5), (6), (7), (8), (9), or (10) of section 60-6,197.03, or section 60-6,198, or pursuant to subdivision (2)(c) or (2)(d) of section 60-6,196 or subdivision (4)(c) or (4)(d) of section 60-6,197 as such subdivisions existed prior to July 16, 2004, shall be guilty of a Class IV felony, and the court shall, as part of the judgment of conviction, revoke the operator's license of such person for a period of fifteen years from the date ordered by the court and shall issue an order pursuant to section 60-6,197.01.

Aguilar was charged under this statute because his May 25, 2004 conviction for driving under the influence, third offense, and his resulting 15-year license revocation, was under Neb. Rev. Stat. § 60-6,196(2)(c).

Aguilar argues that the State failed to present evidence of an essential element necessary to convict him under Neb. Rev. Stat. § 60-6,197.06(1); namely, that his driver's license had been previously revoked "pursuant to" § 60-6,196(2)(c) as such subdivision existed prior to July 16, 2004.

Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *State v. Sikes*, 286 Neb. 38, 834 N.W.2d 609 (2013). It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute. *State v. Warriner*, 267 Neb. 424, 675 N.W.2d 112 (2004). See, also, *State v. Medina-Liborio*, 285 Neb. 626, 829 N.W.2d 96 (2013). Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination. *State v. Draper*, 289 Neb. 777, 857 N.W.2d 334 (2015).

- 4 -

Aguilar insists that the plain and ordinary meaning of "pursuant to" should be interpreted to mean "in compliance with" or "in accordance with" as the phrase is defined by Black's Law Dictionary. *Black's Law Dictionary, Third Pocket Edition, Bryan A. Garner, Editor in Chief, p. 584*. Aguilar argues that such an interpretation requires that the State present evidence that not only was § 60-6,192(2)(c), as such subdivision existed prior to July 16, 2004, the purported basis of the license revocation, but also that his original revocation was done properly or correctly in accordance with this subsection.

We find no merit to Aguilar's tortured interpretation of the words "pursuant to" set forth in the statute. We conclude that the plain, ordinary, and unambiguous meaning of the phrase "pursuant to" in the prosecution of an action for driving during revocation under § 60-6,197.06(1) requires the State to present evidence to show beyond a reasonable doubt that the original revocation was done under the authority of one of the listed statutes, such as § 60-6,196(2)(c), as such subdivision existed prior to July 16, 2004. It is not necessary that the State present evidence of the language contained in the listed statutes or to prove that the original revocation was proper.

There was clearly sufficient evidence in this case to show that Aguilar's license was revoked under the authority of one of the statutes listed within § 60-6,197.06(1). Specifically, Aguilar was convicted on May 25, 2004 (which is obviously prior to July 16, 2004) under § 60-6,196(2)(c), and his driver's license was revoked for a period of 15 years, which had not yet expired at the time of his arrest.

Further, Aguilar's argument that the State had to present evidence that his 2004 conviction under § 60-6,196(2)(c) was done correctly amounts to an improper collateral attack on his prior conviction. When a judgment is attacked in a manner other than by a proceeding in the original action to have it vacated, reversed, or modified, or by a proceeding in equity to prevent its enforcement, the attack is a collateral attack. *State v. Keen*, 272 Neb. 123, 718 N.W.2d 494 (2006). Collateral attacks on previous proceedings are impermissible unless the attack is grounded upon the court's lack of jurisdiction over the parties or subject matter. *State v. Macek*, 278 Neb. 967, 774 N.W.2d 749 (2009). A party to a proceeding will be bound by the judgment in the case when collaterally attacking it, even though the judgment was irregularly or erroneously entered. *State v. Head*, 276 Neb. 354, 754 N.W.2d 612 (2008). The district court correctly concluded that Aguilar's argument that the State failed to prove that he was correctly convicted "pursuant to" § 60-6,196(2)(c) would invite an improper attack upon his 2004 final conviction.

The evidence presented to the jury in this case, viewed and construed most favorably to the State, was clearly sufficient to support Aguilar's conviction. Any rational jury could have found beyond a reasonable doubt that Aguilar's license was revoked "pursuant to" § 60-6,196(2)(c) as it existed prior to July 16, 2004. The district court did not err in overruling Aguilar's motion for directed verdict.

CHOICE OF EVILS JURY INSTRUCTION

Aguilar asserts that the district court erred in denying his request for a choice of evils jury instruction. This request was based on "the theory that, under the particular circumstances at issue, (Aguilar's) purported violation of § 60-6,197.06(1) was done in order to avoid the greater harm of

his children--including one child recovering from an illness--walking home from school in rainy, windy weather."

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013).

The "choice of evils" defense, also referred to as the "justification defense," is contained in Neb. Rev. Stat. § 28-1407 and states in applicable part the following:

> (1) Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if:
>
> (a) The harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged . . . .

Neb. Rev. Stat. § 28-1407(1)(a). This statute reflects the Nebraska Legislature's policy that certain circumstances legally excuse conduct that would otherwise be criminal. *State v. Mowell*, 267 Neb. 83, 672 N.W.2d 389 (2003).

The choice of evils defense requires that a defendant (1) acts to avoid a greater harm; (2) reasonably believes that the particular action is necessary to avoid a specific and immediate harm; and (3) reasonably believes that the selected action is the least harmful alternative to avoid the harm, either actual or reasonably believed by the defendant to be certain to occur. *State v. Mowell*, 267 Neb. 83, 672 N.W.2d 389 (2003).

Generalized and nonimmediate fears are inadequate grounds upon which to justify a violation of law. *State v. Mowell*, 267 Neb. 83, 672 N.W.2d 389 (2003). The availability and applicability of the justification or choice of evils defense requires that a defendant's conduct be responsive to a legally recognized harm. *State v. Cozzens*, 241 Neb. 565, 574, 490 N.W.2d 184, 190 (1992). It is commonly conceded that the exercise of a moral judgment based upon individual standards does not carry with it legal justification or immunity from punishment for breach of the law. *Id*.

Justification, otherwise known as the choice of evils, is an affirmative defense. *State v. Wells*, 257 Neb. 332, 598 N.W.2d 30 (1999). When the justification or choice of evils defense is properly before the finder of fact, the defendant has the initial burden of going forward with evidence of the defense. *Id.* When the defendant has produced sufficient evidence to raise the affirmative defense, the issue is then one which the State must disprove. *State v. Edwards*, 286 Neb. 404, 837 N.W.2d 81 (2013). However, where the record shows there is no legally cognizable defense of justification, the issue of justification will not be submitted to the finder of fact. *State v. Wells, supra*.

Aguilar argues that the choice of evils instruction was warranted by the evidence. Aguilar maintains that the specific and identifiable "greater harm" in this case was allowing his children, one of whom was recovering from a cold, to walk home from school on a cold, rainy, and windy day.

Aguilar downplays the nature of his offense, emphasizing that this was merely a one-time infraction meant to protect his children. Aguilar asserts that "the harm to be prevented through § 60-6,197.06(1) by prohibiting people such as (himself) from driving a full ten years after his most recent conviction for DUI was . . . of incredibly minor significance" and that this statute was designed as "a punitive response to *past* conduct." (Emphasis in original.) Aguilar further argues that "because there is no identifiable harm that § 60-6,197.06 seeks to prevent, it stands to reason that Aguilar did not have to present a particularly dangerous scenario in order to utilize the justification defense."

Aguilar further asserts that because Olga was unable to pick up the children from school, and no other substitute driver was available on such short notice, his decision to drive to pick up the children was reasonably believed by him to be the least harmful alternative to avoid the harm at issue.

Given our review of the record, we conclude that the evidence presented was insufficient to allow for a choice of evils instruction in this case. While we do not minimize Aguilar's concern for his children, any harm that existed in allowing them to walk three to five blocks home from school in the rain was very minor. Aguilar's actions were not necessary to avoid a specific and immediate harm. Rather, the harm sought to be prevented--the potential that Jennifer's cold could return by walking a few blocks in inclement weather--was merely speculative. Aguilar's own testimony revealed that Jennifer was "getting better" and it had been nearly a week since she stayed home from school on March 31, 2014. Such generalized and nonimmediate fears are inadequate grounds upon which to justify a violation of law. *State v. Mowell*, 267 Neb. 83, 672 N.W.2d 389 (2003).

We further disagree with Aguilar's position that driving with a revoked license causes little to no harm. The revocation of a person's driver's license and restriction on driving is designed to protect the public from an individual who has shown a disregard for the safety of others by driving while intoxicated. To allow individuals to break the law by driving during revocation for the purpose of addressing generalized and nonimmediate fears would clearly harm the State's efforts to protect the public and punish wrongdoing. The harm created through Aguilar's breach of § 60-6,197.06(1) outweighs the minor and speculative harm he sought to prevent through driving during revocation. Further, the severity of Aguilar's crime which gave rise to his original conviction for DUI-third offense and the revocation of his license should not be brushed aside by the mere passage of time.

In reaching our conclusion, we note that a justification defense has typically only been permitted under far more dire circumstances, often involving self-defense. See *State v. Mowell*, 267 Neb. 83, 672 N.W.2d 389 (2003) (allowing justification defense to violation of felony possession statute where the defendant, during a bar altercation, knocked gun from attacker's hand to prevent him from shooting defendant's stepson and then picked up gun from floor to prevent attacker from retrieving it); *State v. Beal*, 21 Neb. App. 939, 846 N.W.2d 282 (2014) (choice of evils defense could be available in hypothetical situation where defendant attempted to flee a potential kidnapper and trespassed on private property to hide and procure safety).

In conclusion, we find that Aguilar's action in driving during revocation did not avoid a greater harm and such action was not necessary to avoid a specific and immediate harm. Because

Aguilar failed to produce sufficient evidence to raise the affirmative justification defense, the district court was correct in refusing to submit the issue of justification to the jury. Therefore, Aguilar's second assignment of error is without merit.

## CONCLUSION

The district court did not err in overruling Aguilar's motion for a directed verdict and denying his request for a choice of evils jury instruction.

AFFIRMED.