STATE OF NEBRASKA, APPELLEE, V.
RICHARD WELLS, APPELLANT.
598 N.W. 2d 30

Filed July 23, 1999.   No. S-98-824.

Richard M. Black for appellant.

Don Stenberg, Attorney General, and Amber Fae Herrick for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Richard Wells, appellant, was convicted by a jury of three counts of criminal mischief, a Class IV felony, in violation of Neb. Rev. Stat. § 28-519(2) (Reissue 1995). Wells appeals his convictions and sentences. We affirm Wells' convictions, we

affirm the portions of the sentences imposing incarceration, and we vacate the portions of the sentences regarding restitution and remand the cause to the district court with directions.

## FACTS

Wells did not testify to the jury at trial. However, before trial and in his testimony, Wells admitted to the salient facts in connection with his offer of proof regarding certain exhibits which were excluded by the trial court. The facts are derived from these sources and from evidence at trial.

Wells is a farmer in Antelope County, Nebraska. According to Wells, in mid-September 1997, a construction site adjoining his farm caused soil erosion to his farm and generated ambient dust and sand, resulting in various damages to his farming operation and livestock. Wells testified that the dust and sand generated by the construction site sickened him and his livestock and clogged the engines on Wells' farm machinery, including center-pivot irrigation systems and a corn dryer.

Work at the construction site was performed principally by the John Prouty Construction Company (Prouty Construction). Wells testified that he repeatedly attempted to speak with the construction site's manager about the dust and erosion problems, but he met with no success. Wells testified that his efforts to work with elected town and county officials to correct the dust and erosion caused by the construction also proved fruitless. Wells testified that as construction proceeded, the problems he experienced on his farm as a result of the construction increased and he felt the options available to him diminished.

Just before midnight on October 17, 1997, Wells, accompanied by Allen Vraspir, a young local man whom Wells employed as a farm laborer, and Matthew Braband, a friend of Vraspir's, went to the construction site. According to Wells, their objective was to damage the construction equipment and temporarily disable it. Wells estimated that he, Vraspir, and Braband were at the construction site for less than 10 minutes. During that time, they flattened the tires of trucks, earthmovers, and bulldozers. They shot out headlights and windows in much of the equipment and damaged the radiators. They shot through the tanks of fuel and chemical trucks on the premises, creating leaks. After Wells,

Vraspir, and Braband damaged the equipment, construction at the site was halted for approximately 2 to 3 weeks while Prouty Construction repaired and replaced the damaged equipment. We make no further comment regarding Vraspir or Braband or legal proceedings involving them, as consideration thereof is unnecessary to our decision.

In an information filed on March 2, 1998, in the district court for Antelope County, Wells was charged with three counts of felony criminal mischief, in violation of § 28-519(2). The charges against Wells were tried to a jury in June 1998.

Prior to trial, the State moved in limine for an order preventing Wells from testifying and offering exhibits which, inter alia, would demonstrate that Wells believed he was justified in damaging the construction equipment in order to prevent allegedly illegal conduct at the construction site. Specifically, Wells wished to show that the generation of ambient dust and dirt exceeded legally acceptable limits. The proferred documents consisted of correspondence between state regulators and the owners of the construction site regarding, inter alia, construction permits, refuse disposal, silt and sediment barriers, drainage patterns, regulatory standards, and compliance therewith. The trial court sustained the State's motion in limine.

In an offer of proof at trial made outside the jury's presence, Wells testified that he believed the dust, sand, and erosion generated by the construction were beyond legal limits and that because his efforts to ameliorate these problems by political and regulatory means were unsuccessful, he was legally justified in using force to compel reduction of the sand, dust, and erosion by disabling the construction equipment. In connection with the offer of proof, Wells described the efforts he had undertaken to force compliance. Wells stated, inter alia, that he and other area farmers had considered hiring an attorney to challenge the construction but concluded it would be costly. The trial court disallowed presentation of the proferred evidence to the jury and similarly refused Wells' proferred jury instruction regarding his proposed justification defense. The jury convicted Wells of all three counts of criminal mischief.

A sentencing hearing was conducted on August 4, 1998. John Prouty, proprietor of Prouty Construction, which owned most of

the equipment damaged by Wells, testified regarding the cost of repair and replacement of the damaged construction equipment. Douglas Derscheid, president and general manager of Central Farmers Cooperative, Nonstock, which owned the fuel truck damaged by Wells, testified about the cost of repair to the truck. Testimony by Prouty and Derscheid is detailed in the sentencing discussion below.

The trial court sentenced Wells to a term of 20 months' to 5 years' imprisonment on count I, and to a term of 20 months' to 5 years' imprisonment on count II, to be served concurrently with the sentence for count I. Wells was also sentenced to 18 months' to 4 years' imprisonment on count III, to be served consecutively to his imprisonment for counts I and II.

As part of the sentences imposed upon Wells, the trial court also ordered Wells to pay restitution to Prouty and its insurer in the amount of $87,173.37 on count I; restitution of $408.10 payable to the insurers of the cooperative on count II; and restitution of $1,285.65 payable to the cooperative and its insurer on count III. The trial court ordered that Wells pay all restitution amounts "forthwith." This appeal followed.

## ASSIGNMENTS OF ERROR

Wells has assigned nine errors on appeal. Wells claims, consolidated and restated, that the trial court erred in refusing to allow him to present evidence regarding his proposed justification defense and that the sentences he received are excessive.

## STANDARD OF REVIEW

■ In proceedings where Nebraska statutes involving the rules of evidence apply, the admission of evidence is controlled by rule and not by judicial discretion, except where judicial discretion is a factor involved in assessing admissibility. *State v. Clark*, 255 Neb. 1006, 588 N.W.2d 184 (1999); *State v. Nissen*, 252 Neb. 51, 560 N.W.2d 157 (1997).

■ A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion. An abuse of discretion occurs when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. White*, 256 Neb. 536, 590 N.W.2d

863 (1999); *State v. Torres*, 256 Neb. 380, 590 N.W.2d 184 (1999).

## ANALYSIS

*Exclusion of Evidence.*

Wells claims that the trial court erroneously excluded evidence which he offered to support his proposed defense that he was justified in disabling and damaging the construction equipment. We find no merit to this claim.

Wells was charged with three counts of violating § 28-519(2), which provides, inter alia, that criminal mischief is a Class IV felony if an actor intentionally causes pecuniary damage in excess of $300 to another's property. Wells admitted that he vandalized the equipment at the construction site. He maintained that he was justified in damaging the construction equipment to slow or halt the project and that evidence of a failure in regulatory compliance and enforcement at the site was relevant to prove his justification defense. The evidence which Wells contends was wrongly excluded consists of 15 pieces of correspondence and related attachments exchanged between representatives of the Nebraska Department of Environmental Quality and the owners and representatives of the property upon which the construction was taking place.

Wells argued at the hearing on the State's motion in limine that he intended to offer this evidence to prove that state regulators were concerned about the environmental impact of the construction project, that the construction was ongoing without proper regulatory compliance, and that despite the state regulators' concerns, state officials did not take action to halt the construction so as to bring the project into regulatory compliance. Wells testified in connection with the offer of proof at trial about his conversation with a local town official whom Wells believed sympathized with his concerns but who did not act to curb the erosion and pollution that were the source of Wells' complaint.

Justification defenses are premised upon Neb. Rev. Stat. § 28-1406 et seq. (Reissue 1995). Justification, otherwise known as the choice of evils, is an affirmative defense. *State v. Kinser*, 252 Neb. 600, 567 N.W.2d 287 (1997). Where the justification or choice of evils defense is properly before the finder

of fact, the defendant has the initial burden of going forward with evidence of the defense. *Id.* Such evidence must consist of facts showing that he or she (1) acted to avoid a greater harm; (2) reasonably believed that the particular action was necessary to avoid a specific and immediately imminent harm; and (3) reasonably believed that the selected action was the least harmful alternative to avoid the harm, either actual or reasonably believed by the defendant to be certain to occur. *State v. Cozzens*, 241 Neb. 565, 490 N.W.2d 184 (1992). When the defendant has produced sufficient evidence to raise the defense, the issue is then one which the State must disprove. *State v. Kinser, supra.* However, where the record shows there is no legally cognizable defense of justification, the issue of justification will not be submitted to the finder of fact. *Id.*

In property crimes, the defense of justification is available only in limited circumstances. *State v. Clayburn*, 223 Neb. 333, 389 N.W.2d 314 (1986). Section 28-1415 provides generally that conduct involving appropriation of, seizure of, destruction of or damage to, intrusion on, or interference with property is justifiable under circumstances which would otherwise establish a defense of privilege in a civil action based thereon, such as where an actor uses reasonable force to defend his or her superior right to the property as against an interloper. See, e.g., *Vacanti v. Master Electronics Corp.*, 245 Neb. 586, 514 N.W.2d 319 (1994). See, also, *State v. Korf*, 201 Neb. 64, 266 N.W.2d 86 (1978) (holding that invitation or license may constitute privilege).

The trial court excluded Wells' proffered justification evidence on the basis that it was irrelevant, see Neb. Rev. Stat. § 27-401 (Reissue 1995), or if relevant, its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, see Neb. Rev. Stat. § 27-403 (Reissue 1995). In connection with its ruling excluding the evidence, the trial court stated that "in the time that it took the defendant . . . to go to the construction site and to cause the damage that the defendant caused, he could have had drafted a petition for an injunction to be filed," which the court noted "would have resulted, in all likelihood, in the issuance of a temporary restraining order."

We understand the trial court's ruling to be a determination that Wells' offer of proof failed to support a legally cognizable theory of the affirmative defense of justification. *State v. Kinser, supra.* See, also, *State v. Cozzens, supra; State v. Clayburn, supra.* We agree with this determination. Accordingly, the trial court correctly ruled that Wells' justification evidence was irrelevant and properly excluded such evidence.

In his offer of proof and motion at trial that the trial court reconsider its ruling excluding the justification evidence, Wells testified that before he vandalized the construction equipment, he had conferred with an attorney about civil means by which the erosion and pollution caused by the construction could be controlled. Wells testified that he and other area farmers considered hiring the attorney to challenge the construction, but they concluded it would be costly, and "I didn't feel like I should have to go fight the battle for everybody in that area, although I'm getting hit the worst."

Wells' testimony regarding his exploration of civil remedies defeats an inference that he reasonably believed that vandalizing the construction equipment was necessary to avoid the harm caused by construction and that vandalism was the least harmful alternative available to him to avoid such harm. See *State v. Cozzens, supra.* Wells' testimony clearly indicates that the erosion and pollution had become an ongoing problem and not an immediately imminent harm about to befall him. See, e.g., *State v. Graham*, 201 Neb. 659, 271 N.W.2d 456 (1978) (holding that general fear of future harm which is not specific and imminent is insufficient basis for justification defense).

Following our review of the record, we note there is nothing in the record on appeal which suggests that Wells' conduct was legally justified or that it would be privileged in a civil action. See § 28-1415. Wells testified that he and his farming operation were harmed by soil erosion and pollution generated by the construction which were allegedly unlawfully created due to failures in regulatory compliance and enforcement. Confronted with this situation, Wells had several unexercised lawful civil courses of potential resolution available, including, as the trial court observed, an action seeking as relief a temporary restraining order and injunction, see Neb. Rev. Stat. § 25-1062

et seq. (Reissue 1995), or, inter alia, a mandamus action to compel the proper governing authority to enforce regulatory standards if the authority had a duty to do so, see Neb. Rev. Stat. § 25-2156 et seq. (Reissue 1995).

The trial court correctly determined that Wells did not have a legally cognizable theory of justification as a defense and that Wells' evidence regarding the affirmative defense of justification was inadmissible. We affirm the trial court's ruling excluding this evidence.

*Excessive Sentences.*

Wells claims generally that the sentences imposed upon him are excessive. In particular, Wells argues that sentences of probation should have been ordered. We see no error in connection with the portions of the sentences imposing periods of incarceration.

As to the sentences of imprisonment which are detailed in the facts above, each sentence is within the statutorily defined minimum and maximum terms for Class IV felonies prescribed by Neb. Rev. Stat. § 28-105 (Reissue 1995), and we find no abuse of discretion in connection with the terms of incarceration imposed on Wells. In so concluding, we are aware, as Wells points out, that at the time of his crime, Wells had lived in Antelope County for many years and had no prior criminal convictions. However, whether probation or incarceration is ordered is a choice within the discretion of the trial court, whose judgment denying probation will be upheld in the absence of an abuse of discretion. *State v. Zitterkopf*, 236 Neb. 743, 463 N.W.2d 616 (1990). We find no abuse of discretion in the imposition of sentences of incarceration imposed upon Wells. However, we reach a different result with respect to the trial court's sentencing orders of restitution.

The trial court ordered Wells to pay an aggregate sum of $88,867.12 in restitution, as follows: $87,173.37 on count I for damages sustained by Prouty Construction, to be divided between Prouty and its insurer, which had indemnified Prouty for some of the damage; $408.10 on count II, payable to the insurer for the cooperative for sums paid to the cooperative to repair damage caused by Wells; and $1,285.65 on count III, for

damages sustained by the cooperative to be divided between the cooperative and its insurer for the remaining damage. The trial court ordered Wells to pay all of the restitution "forthwith."

■ Neb. Rev. Stat. § 29-2280 et seq. (Reissue 1995) vests trial courts with the authority to order restitution for actual damages sustained by the victim of a crime for which a defendant is convicted. *State v. Escamilla*, 237 Neb. 647, 467 N.W.2d 59 (1991); *State v. Yost*, 235 Neb. 325, 455 N.W.2d 162 (1990). Section 29-2281 provides the following parameters for imposing a sentence of restitution:

> To determine the amount of restitution, the court may hold a hearing at the time of sentencing. The amount of restitution shall be based on the actual damages sustained by the victim and shall be supported by evidence which shall become a part of the court record. The court shall consider the defendant's earning ability, employment status, financial resources, and family or other legal obligations and shall balance such considerations against the obligation to the victim. . . . The court may order that restitution be made immediately, in specified installments, or within a specified period of time not to exceed five years after the date of judgment or defendant's final release date from imprisonment, whichever is later. Restitution payments shall be made through the clerk of the court ordering restitution. The clerk shall maintain a record of all receipts and disbursements.

■ Pursuant to § 29-2281, before restitution can be properly ordered, the trial court must consider: (1) whether restitution should be ordered, (2) the amount of actual damages sustained by the victim of a crime, and (3) the amount of restitution a criminal defendant is capable of paying. The amount of actual damages and the amount of restitution a criminal defendant is capable of paying shall be based on sworn information which may be documentary in nature. In the instant case, the trial court determined that restitution was an appropriate part of the sentences imposed upon Wells. There is no challenge to the appropriateness of restitution in this case, if properly imposed.

At Wells' sentencing hearing, the State introduced sworn testimony and documentary evidence from representatives of

Prouty Construction and the cooperative regarding losses each had sustained as a result of Wells' vandalism. The trial court allowed Wells to cross-examine these witnesses and challenge their damage claims, all of which were made part of the evidentiary record consistent with the rule set forth in *State v. McLain*, 238 Neb. 225, 469 N.W.2d 539 (1991) (holding that statements regarding victim's damages which are unsworn and uncorroborated are insufficient basis for restitution order). The amount of actual damages was properly established.

The record in this case is void, however, of the trial court's meaningful consideration of Wells' ability to pay the restitution ordered and to pay it "forthwith." By "forthwith," we understand that the order of restitution was to be paid "immediately," as that term is used in § 29-2281. With respect to Wells' ability to pay restitution, we note that § 29-2281 provides, inter alia, that "[t]he court *shall* consider the defendant's earning ability, employment status, financial resources, and family or other legal obligations and shall balance such considerations against the obligation to the victim." (Emphasis supplied.) The trial court's consideration of these factors is mandatory. The absence from the record of sworn and meaningful information regarding Wells' ability to pay and the trial court's resultant inability to meaningfully consider the statutory factors regarding Wells' ability to pay necessitates reversal of the restitution order. See, generally, *State v. Yost*, 235 Neb. 325, 455 N.W.2d 162 (1990).

In *Yost*, the defendant was convicted of aiding and abetting the commission of second-degree arson. His sentence included an order of $105,000 restitution. Restitution was imposed without a separate hearing on the amount of the victims' actual damages. The *Yost* presentence investigation report contained general, uncorroborated statements of the victims' damages and little information regarding Yost's ability to satisfy the restitution order. On appeal, this court expressed concern regarding the adequacy of the record regarding actual damages sustained by the victim and reversed the restitution order and remanded the cause, noting, inter alia, that the sentencing court did not meaningfully consider Yost's earning ability, employment status, financial obligations, and family or other legal obligations as mandated by § 29-2281.

In the instant case, the record is well developed regarding the victims' damages, but is insufficiently developed regarding Wells' earning ability and ability to pay "forthwith." To the extent the record contains information regarding Wells' employment status, it suggests that he is a self-employed farmer with title to no less than three quarter sections of land, who provides all of the care for his livestock and most of the labor for his crops. Nothing in the record indicates how Wells' farm, which appears to be his main source of income, will operate or produce income during Wells' incarceration. With respect to Wells' financial obligations, Wells produced uncontroverted evidence that, at the time of sentencing, he was already legally obligated for farm operating loans and related expenses in the amount of at least $470,000. He indicated that he was having difficulty obtaining an additional $220,000 operating loan. The inference from this evidence is that the order of restitution to be paid "forthwith" is not appropriate. The record lacks sworn information or testimony which established the nature of Wells' unencumbered assets which would prove sufficiently liquid to satisfy a court order to pay restitution in the amount of $88,867.12 forthwith.

On appeal, we do not endeavor to reform the trial court's restitution order. Rather, we review the record made in the trial court for compliance with the statutory factors which control restitution orders. *State v. Yost, supra.* The plain language of § 29-2281 and the case law require appropriate sworn documentation in the record of both the actual damages sustained by the victim and the defendant's ability to pay restitution. The statute and case law require that the sentencing court give meaningful consideration to the defendant's earning ability, employment status, financial resources, and family or other legal obligations and that the court meaningfully consider these factors and balance the defendant's financial situation against the defendant's obligation to the victims in imposing an order of restitution as part of a criminal sentence.

We have reviewed the record regarding the order of restitution imposed upon Wells and determine that, due to the state of the record, it does not demonstrate that the trial court meaningfully considered the factors mandated by § 29-2281 with respect

to Wells' ability to pay $88,867.12 in restitution forthwith. We, therefore, vacate the trial court's order regarding restitution and remand this matter to the trial court for such proceedings as are consistent with this opinion and the factors articulated in § 29-2281.

## CONCLUSION
Because Wells did not have a legally cognizable defense of justification, the exclusion of evidence regarding Wells' proposed justification defense was not error. We affirm Wells' convictions. The portions of the sentences imposing terms of incarceration are affirmed. The portions of the sentences regarding restitution are vacated, and the cause is remanded for treatment consistent with this opinion.

AFFIRMED IN PART, SENTENCE OF RESTITUTION VACATED, AND CAUSE REMANDED WITH DIRECTIONS.