IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. TJADEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
DONALD R. TJADEN, APPELLANT.

Filed October 29, 2013.    No. A-13-330.

Appeal from the District Court for Perkins County, DONALD E. ROWLANDS, Judge, on appeal thereto from the County Court for Perkins County, EDWARD D. STEENBURG, Judge. Judgment of District Court affirmed.

James J. Paloucek, of Norman, Paloucek & Herman Law Offices, and Russel L. Jones, of Jones Law Office, for appellant.

Jon Bruning, Attorney General, and Nathan A. Liss for appellee.

INBODY, Chief Judge, and MOORE and RIEDMANN, Judges.

INBODY, Chief Judge.

INTRODUCTION

After Donald R. Tjaden left his home in the middle of the night to check on the source of a bright light coming from a highway about a half mile from his home, he was arrested and charged with, among other things, driving under the influence. Following his convictions, he appealed, contending that his requested jury instruction regarding "choice of lesser harm" should have been given to the jury.

STATEMENT OF FACTS

On the evening of August 27, 2011, Tjaden, his friend, and Tjaden's girlfriend attended a street dance in Madrid, Nebraska. Throughout the evening, the friends had a good time, Tjaden and his friend drank some beer, and Tjaden's girlfriend acted as the designated driver. At some point later that evening, the friends decided to leave the street dance and return to Tjaden's

house, which is located about 2 miles east of Madrid on Nebraska Highway 23 and then a half mile north on County Road 340. The drive was uneventful, and they saw nothing unusual on the drive to Tjaden's home. After arriving at Tjaden's home, Tjaden and his friend continued to drink, talk, and watch television. After about an hour, Tjaden fell asleep on the couch, his girlfriend went into a bedroom to read a book, and his friend continued to watch television.

Later, Tjaden's girlfriend came out of the bedroom and woke Tjaden to tell him that cows in a nearby pasture were "bawling," which is a warning sign that something is wrong and could mean that there was a predator around, a calf was down, or a calf had gotten out of the pasture. Tjaden and his friend went outside, heard the cows "bawling," and saw a very bright light down at the highway. Concerned that there might have been an accident or that cattle had gotten onto the highway, Tjaden decided to drive his pickup to the area and see what was going on or if someone was in trouble and needed assistance, while Tjaden's friend and girlfriend remained at the house.

The lights actually turned out to be illuminating a regulatory vehicle checkpoint that police had set up on Highway 23 at the intersection of County Road 340. The checkpoint was to run from approximately 11:30 p.m. to 1:30 a.m., and since the intersection was dark at night, a portable lighting system was set up to illuminate the checkpoint area. The lighting system, which stood 20 to 40 feet above the highway, was stationed on the south side of Highway 23 on County Road 340, facing to the north and pointed directly toward Tjaden's house. Signs announcing the checkpoint were placed on the roadways in all four directions surrounding the checkpoint. On Highway 23, there were large reflective signs set up approximately one-half to 1 mile away from the actual checkpoint in either direction. On County Road 340, there were smaller signs set up approximately 20 to 30 feet from the actual checkpoint in either direction.

It was shortly before 1:30 a.m. on August 28, 2011, when Nebraska State Patrol Trooper Matthew Schmit observed a pickup driving south on County Road 340 approach the checkpoint, but then stop and shut off its lights. Because there was no shoulder on the road and Schmit felt that the vehicle was improperly parked in the traffic lane of the road, Schmit got into his patrol car and drove to see if the motorist needed assistance. As Schmit approached the pickup, the pickup drove south past him and sped away, so Schmit turned his patrol car around and pursued the pickup, eventually conducting a traffic stop near the vehicle checkpoint.

Upon Schmit's making contact with the sole occupant of the pickup, Tjaden identified himself to Schmit, but Tjaden did not have his driver's license, vehicle registration, or proof of insurance, and he was not wearing his seatbelt. Additionally, Schmit noticed that Tjaden smelled of alcohol and was slurring his speech. When Schmit asked Tjaden if he had been drinking, Tjaden said that he had drank "a lot," which Tjaden clarified meant seven or eight beers. Upon being arrested for driving under the influence, Tjaden told Schmit that there was an unloaded shotgun in his pickup, which was later determined to actually be loaded. A chemical breath test revealed that Tjaden had an alcohol concentration of .231 of a gram of alcohol per 210 liters of his breath.

Tjaden was charged in Perkins County Court with driving under the influence, a Class W misdemeanor; failing to carry an operator's license on his person, failing to carry a motor vehicle registration certificate, and having a loaded shotgun in a motor vehicle on a highway, all Class III misdemeanors; and improper parking and violation of an occupant protection system,

both infractions. A jury trial was held on the misdemeanor charges on June 14, 2012. The parties stipulated that on or about August 28, 2011, Tjaden was in possession of a loaded shotgun in his pickup, which he was operating on a highway in Perkins County, Nebraska. The parties also stipulated that Tjaden's breath alcohol test was .231 of a gram of alcohol per 210 liters of his breath and that all tests were performed in accordance with title 177 of the Nebraska Administrative Code.

Tjaden testified at trial and admitted that he had been driving under the influence, but he claimed he drove that night only because he thought that there had possibly been an accident or that cattle had gotten out of the pasture and could cause an accident. Specifically, Tjaden testified that he "had no idea" what the light was and that in the 35 years he had lived on the property, he had never seen anything like it before. Tjaden testified that he "just went down to see if there was anything I could do, if there was any assistance I could give." Although Tjaden has cardiopulmonary resuscitation training, he is not a paramedic or on the volunteer fire department ambulance crew.

Tjaden also testified that he was concerned for the safety of his neighbors or anyone driving down the highway and that if anyone hit a cow, he would "feel very bad about it, very responsible." Tjaden testified that he learned 1½ days later that cattle had gotten out of the pasture and into a cornfield which had access to County Road 340; if the cattle accessed the county road and traveled south a half mile, they would have gotten onto Highway 23. However, Tjaden admitted that the cattle were owned by someone else who rented the pasture near his home and that the owner of the cattle testified he did not receive a call on the night of August 27, 2011, informing him his cattle might have gotten out of the pasture.

Tjaden's friend testified that he had "no idea" what the lights were and said he thought it could have been from a car accident, a train wreck, or combine lights. Tjaden's friend acknowledged that he did not call the 911 emergency dispatch service, because he "wasn't convinced there was an accident."

During the jury instruction conference, Tjaden proposed an instruction on the "choice of lesser harm" defense. The county court took the matter under advisement and thereafter refused to instruct the jury on the "choice of lesser harm" defense, setting forth its reasoning in a written order. The county court found that Tjaden had not established a factual basis for a reasonable belief that a specific and immediate threat of harm was certain to occur; rather, Tjaden expressed a general belief that there might have been a motor vehicle accident and someone might be injured, he was worried about cattle getting out from their enclosure and getting on county roads or highways causing a safety concern for people traveling on those roads, and Tjaden had no idea of what to expect when he got to the scene. Further, the county court noted that Tjaden had viable alternatives to driving under the influence, such as calling 911 or calling the owner of the cattle to investigate.

The case was submitted to the jury, which found Tjaden guilty of failing to carry an operator's license, failing to carry vehicle registration, driving under the influence with an alcohol concentration of .15 or more, and carrying a loaded shotgun in a motor vehicle on a highway. The court accepted the jury's verdict on all four counts, dismissed the jury, and then found Tjaden guilty of the remaining infractions of improper parking and violation of an occupant protection system. Tjaden was sentenced to 12 months' probation, and his driver's

license was revoked for 1 year, in addition to other provisions included in the probation order and various fines imposed by the county court.

Tjaden appealed to the Perkins County District Court, arguing that the county court erred in refusing to instruct the jury as to his "choice of lesser harm" defense. The district court affirmed the county court's refusal to instruct the jury on the "choice of lesser harm" defense.

## ASSIGNMENT OF ERROR

Tjaden's assignments of error can be consolidated into the following issue: The district court erred in affirming the county court's refusal to instruct the jury on the "choice of lesser harm" defense.

## ANALYSIS

*Denial of Proposed Jury Instruction.*

Tjaden claims the district court erred in affirming the county court's refusal to give his requested jury instruction on the "choice of lesser harm" defense. Tjaden proposed that the following jury instruction be submitted to the jury:

### CHOICE OF LESSER HARM

[Tjaden] acted to avoid a greater harm if:

(1) the harm he sought to avoid was greater that (sic) the harm sought to be prevented by the law defining:

A. Improper stopping or parking, Statute No. 60-6,166

B. No license on person, Statute No. 60-489

C. No registration in vehicle, Statute No. 60-363

D. Fail (sic) to use seat belt, Statute No. 60-6,270

E. DUI - .15+, Statute No. 60-6,196

F. Loaded shotgun in vehicle, Statute No. 37-522

(2) [Tjaden] reasonably believed that his conduct was necessary to avoid a specific and immediate threat of harm; and

(3) [Tjaden] reasonably believed that acting as he did was the least harmful alternative to avoid this threatened harm.

The fact that [Tjaden] may have been wrong in what he believed does not matter so long as there was a reasonable basis for what he believed and he acted reasonably in response to his beliefs.

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Sinica*, 277 Neb. 629, 764 N.W.2d 111 (2009).

In the proposed jury instruction submitted by Tjaden, he referenced both the misdemeanor offenses with which he was charged in addition to the infractions with which he had been charged, but which were not submitted to the jury. Tjaden had neither a constitutional nor a statutory right to a jury trial on the infractions with which he was charged. See, *State v. Bishop*, 224 Neb. 522, 399 N.W.2d 271 (1987) (federal Constitution requires jury trial in

criminal cases involving serious offense carrying maximum penalty in excess of 6 months' imprisonment); Neb. Rev. Stat. § 25-2705 (Cum. Supp. 2012) (jury trials may not be demanded in county court for criminal case arising under city or village ordinances, traffic infractions, or other infractions). Because Tjaden was not entitled to a jury trial on the two traffic infractions which were punishable by only fines and because those two charges were not before the jury, Tjaden's proposed jury instruction, which included the infractions, was not an accurate instruction as it included charges which were not before the jury and the proposed jury instruction would have had a tendency to confuse the jury.

*Choice of Lesser Harm as Defense.*

Although we have determined that the jury instruction proposed by Tjaden was not an accurate instruction, we still consider whether Tjaden was entitled to a lesser harm instruction based upon the evidence the State presented regarding the charged offenses of failing to carry an operator's license, failing to carry vehicle registration, driving under the influence with an alcohol concentration of .15 or more, and carrying a loaded shotgun in a motor vehicle on a highway. Whether requested to do so or not, a trial court has the duty to instruct the jury on issues presented by the pleadings and the evidence. *State v. Weaver*, 267 Neb. 826, 677 N.W.2d 502 (2004).

Choice of lesser harm, which is generally known as justification or the choice of evils defense, is an affirmative defense. Neb. Rev. Stat. § 28-1407 (Reissue 2008); *State v. Wells*, 257 Neb. 332, 598 N.W.2d 30 (1999). The justification or choice of evils defense requires that a defendant (1) acted to avoid a greater harm, (2) reasonably believed that the particular action is necessary to avoid a specific and immediately imminent harm, and (3) reasonably believed that the selected action is the least harmful alternative to avoid the harm, actual or reasonably believed by the defendant to be certain to occur. *Id*. When the defendant has produced sufficient evidence to raise the defense, the issue is then one which the State must disprove; however, where the record shows there is no legally cognizable defense of justification, the issue of justification will not be submitted to the finder of fact. *Id*. A trial court is not obligated to instruct the jury on matters which are not supported by evidence in the record. *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999).

In this case, the evidence offered by Tjaden simply does not support a choice of lesser harm instruction. Even if we accept Tjaden's version of the facts, Tjaden was not faced with any threat of a specific and immediately imminent harm when he drove under the influence. During his trial testimony, Tjaden admitted that he had been driving under the influence, but he claimed he drove that night only because he thought, after seeing the bright light and hearing the cows "bawling," that there had possibly been an accident or that cattle had gotten out of the pasture and could get on the highway and cause an accident. However, Tjaden testified that he "had no idea" what the light was and he "just went down to see if there was anything I could do, if there was any assistance I could give" even though he was not a paramedic or on the volunteer fire department ambulance crew.

Further, Tjaden admitted that he did not own the cattle and the evidence established that Tjaden did not call the owner of the cattle to inform him that his cattle might have gotten out of the pasture. Tjaden's stated concern that cows may have gotten out of the pasture and onto the

highway and might cause an accident does not present a risk of injury that is so compelling or imminent as to leave Tjaden with no alternative to avoid the injury other than driving under the influence. "Generalized and nonimmediate fears are inadequate grounds upon which to justify a violation of law." *State v. Mowell*, 267 Neb. 83, 95, 672 N.W.2d 389, 400 (2003). Accordingly, the evidence did not support an instruction on choice of lesser harm, justification, or choice of evils, and the county court did not err in failing to include a jury instruction thereon.

## CONCLUSION

In sum, we find that the district court properly affirmed the county court's refusal to give Tjaden's requested jury instruction on choice of lesser harm, because it was not an accurate instruction and would have confused the jury. We further find that the evidence did not support an instruction on choice of lesser harm. Thus, Tjaden's convictions and sentences are affirmed.

AFFIRMED.