IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. KELLEY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SARAH KELLEY, APPELLANT.

Filed April 3, 2018.    No. A-17-500.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Joseph D. Nigro, Lancaster County Public Defender, and Robert G. Hays for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

RIEDMANN and BISHOP, Judges, and INBODY, Judge, Retired.

RIEDMANN, Judge.

INTRODUCTION

Sarah Kelley appeals her conviction and sentence of theft by deception, over $1,500, entered in the district court of Lancaster County. We affirm in part, and in part reverse and remand for further proceedings to address the issue of restitution.

BACKGROUND

In December 2015, Kelley was charged with theft by deception, over $1,500. Prior to trial, she filed a motion to suppress statements she made during an interview with law enforcement. A hearing on the motion to suppress was held, and the evidence revealed that the Nebraska State Patrol asked Eric Carrizales, a sheriff's detective in Texas, to assist in an investigation involving Kelley. On September 5, 2014, Carrizales called Kelley, and Kelley agreed to meet with him at the sheriff's office on September 10.

Kelley arrived at the interview with her then-husband. Carrizales was not dressed in a police uniform, but was dressed in business casual attire. He escorted Kelley to an interview room and left the door unlocked. The interview lasted approximately 1 hour 48 minutes, and a videotape of the recorded interview was received into evidence at the suppression hearing.

Kelley was not under arrest at the time of the interview, and Carrizales told Kelley that he was not going to arrest her and that she was free to leave at any time. Carrizales read to Kelley a rights advisory form which set out the *Miranda* rights. He explained that it is the sheriff's department's rule to read the form to everyone who is interviewed. Kelley initialed each line on the form and signed it at the bottom. Kelley asked whether she needed a lawyer, and Carrizales told her that if she wanted one she could have one and that it was not up to him to decide whether she needed one. At no point during the interview did Kelley ask for an attorney, ask to stop the interview, or ask to leave. After signing the rights advisory form, Kelley agreed to speak with Carrizales.

Carrizales testified at the suppression hearing that as the interview went on, he could smell the odor of alcohol, so he asked Kelley if she had been drinking. She told him that she had had one alcoholic drink prior to the interview, but Carrizales testified that she did not appear confused at any point during the interview.

Kelley also testified at the hearing on the motion to suppress. She asserted that she did not understand what was happening during the interview, was terrified that she was going to be arrested, and did not understand the words on the *Miranda* form. She claimed that Carrizales told her that she did not need a lawyer right then. Kelley testified that after the first hour of the interview, she began to tell Carrizales whatever he wanted to hear so that she could leave. She said she did not understand all of the questions asked of her and did not know the answers to all of the questions.

According to Kelley, at the time of the interview she was taking antidepressant, antianxiety, and pain medications and had been drinking, all of which slowed down her thought process. She stated that her husband had provided her wine to drink on the way to the interview, and she did not recall how much wine she drank. Kelley claimed that she was anxious and scared during the interview because her husband was furious that they had to drive some distance to the interview and that he threatened that if the interview took too long, he would "punch [her] in the face until [her] eardrums burst." She said she did not willingly participate in the interview, and as soon as Carrizales read her the *Miranda* rights, she wanted to leave because she was scared. Kelley testified that she signed the rights advisory form because she was scared he would arrest her. She claimed that Carrizales never told her that she could leave at any time.

At the conclusion of the suppression hearing, the district court found that the statements Kelley made to Carrizales during the interview were freely and voluntarily made, without promises, threats, or coercion, or without placing Kelley in fear. The motion to suppress was therefore denied.

A jury trial was then held, and the evidence generally established that Thomas White was a retired Nebraska state employee, who was receiving retirement benefits via monthly payments. Upon his death, the benefits were to cease completely. However, after Thomas' death in 2012, his retirement checks continued to be cashed and deposited into a bank account belonging to Kelley.

Investigators discovered that at the time, Kelley was married to Thomas' son. Kelley admitted to signing Thomas' name on his retirement checks and depositing them into her bank account, but she claimed she did so at the direction of Thomas' son, who told her the checks belonged to him as Thomas' beneficiary. Thomas' son informed investigators that he had been living in Japan and had no idea that his father continued to receive retirement proceeds after his death. He testified at trial that he neither knew about, nor authorized, Kelley to deposit his father's retirement proceeds.

The jury ultimately found Kelley guilty of theft by deception and determined the value of the property involved was $39,803.17. The district court sentenced Kelley to 4 to 6 years' imprisonment and ordered restitution in the amount of $5,000 to be taken out of Kelley's bond. This timely appeal followed.

ASSIGNMENTS OF ERROR

Kelley assigns that the district court erred in (1) denying her motion to suppress the statements made to Carrizales, (2) admitting her statements into evidence at trial over her objection, (3) sentencing her to pay restitution, and (4) imposing an excessive sentence.

STANDARD OF REVIEW

In reviewing a motion to suppress a confession based on the claimed involuntariness of the statement, an appellate court applies a two-part standard of review. With regard to historical facts, an appellate court reviews the trial court's findings for clear error. Whether those facts suffice to meet the constitutional standards, however, is a question of law, which an appellate court reviews independently of the trial court's determination. *State v. Turner*, 288 Neb. 249, 847 N.W.2d 69 (2014).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Wofford*, 298 Neb. 412, 904 N.W.2d 649 (2017). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

ANALYSIS

*Motion to Suppress.*

Kelley argues that the district court erred in denying her motion to suppress the statements she made during her interview with Carrizales because her statements were not made freely, voluntarily, and knowingly. Kelley argues that she did not understand her rights, was under the influence of medication and alcohol at the time and was afraid of being arrested. She also claims that she was terrified, did not willingly participate in the interview, and was afraid of being beat up by her husband, who had driven her to the interview. We find no merit to this assigned error.

The Due Process Clause of U.S. Const. amend. XIV and the due process clause of Neb. Const. art. I, § 3, preclude admissibility of an involuntary confession. *State v. Turner, supra*. Whether a confession or statement was voluntary depends on the totality of the circumstances. *Id*. Coercive police activity is a necessary predicate to the finding that a confession is not voluntary within the meaning of the Due Process Clause of the 14th Amendment. *State v. Turner, supra*. The

prosecution has the burden to prove by a preponderance of the evidence that incriminating statements by the accused were voluntarily given and not the product of coercion. *State v. McClain*, 285 Neb. 537, 827 N.W.2d 814 (2013). Factors to consider include the interrogator's tactics, the details of the interrogation, and any characteristics of the accused that might cause his or her will to be easily overborne. *Id.*

Because coercive police activity is a necessary predicate to finding that a statement was involuntarily made, we reject Kelley's argument with respect to her fear of violence from her husband. Considering the totality of the circumstances, we conclude that Kelley's statements were knowingly, freely, and voluntarily made.

Carrizales' interview with Kelley occurred in an interview room, and the door was unlocked. Carrizales was dressed casually. Kelley was not under arrest at the time of the interview, and Carrizales informed her at least three times at the beginning of the interview that he was not going to arrest her or charge her with any crimes. Carrizales also informed her multiple times that she was free to go at any time if she wished. Carrizales never made threats, promises, or inducements in order to get Kelley to speak with him. At one point Kelley told Carrizales that she was "more than happy" to speak with him and later confirmed that she had no problem participating in the interview.

Before asking Kelley any substantive questions, Carrizales read to her the rights advisory form which sets out the *Miranda* rights. Kelley listened to Carrizales read the rights to her and asked appropriate questions at times. When Kelley was advised of her right to have a lawyer present, she asked if she needed one, and Carrizales responded that if she wanted one she could have one. After reading the form to Kelley, Carrizales asked whether she would knowingly, willingly, and voluntarily speak with him, and she responded affirmatively and initialed and signed the advisory form. Not only did Kelley fail to express any inability to understand the *Miranda* rights, she referred to them by name before Carrizales explained them to her. Additionally, there is no indication that Kelley lacked the intelligence to understand or appreciate her *Miranda* rights.

Carrizales testified that throughout the interrogation, Kelley appeared to understand everything what was asked of her. The videotape establishes that Kelley's responses to questions were appropriate, and she was cooperative. She never appeared confused or as if she did not understand what was happening.

Approximately 20 minutes into the interview, Carrizales told Kelley that he smelled alcohol. She confirmed that she had had a glass of wine with lunch prior to the interview. When Carrizales asked if Kelley was able to continue the interview, she replied, "I'm totally ok" and again confirmed that she just had one drink and is unable to drink much more than that because of a kidney issue. At the very end of the videotape, Carrizales again asks how much Kelley had to drink, and she reiterates more than once that she had only one glass of wine at home prior to leaving for the interview. There is no indication from the videotape that any alcohol or medication Kelley consumed prior to the interview affected her to the point that she was unaware of what she was doing or unable to consent to the interview.

Further, Kelley was repeatedly informed that she could terminate the interview at any time and was free to leave. She twice stated that she would willingly speak with Carrizales, and there is no indication from the videotape that she was scared. At one point during the interview,

Carrizales commented to Kelley that she "seem[s] pretty relaxed" about everything. She indicated that she was "stressed" about the topic of discussion, but there was nothing to indicate that she was terrified of participating in the interview such that her will was overborne. Based on the totality of the circumstances surrounding Kelley's interview with Carrizales, we conclude that the statements Kelley made were knowingly, freely, and voluntarily made. Therefore, the district court did not err in denying her motion to suppress.

Because we conclude that the motion to suppress was properly denied, we find no merit to Kelley's second assigned error that the court erred in allowing the statements into evidence at trial.

*Restitution Order.*

Kelley argues that the district court erred in ordering her to pay restitution because it failed to follow the statutory requirements before issuing such order. We agree.

Neb. Rev. Stat. § 29-2280 et seq. (Reissue 2016) vests trial courts with the authority to order restitution for actual damages sustained by the victim of a crime for which the defendant is convicted. *State v. Holecek*, 260 Neb. 976, 621 N.W.2d 100 (2000). In imposing restitution, § 29-2281 provides, in part, the following parameters:

> To determine the amount of restitution, the court may hold a hearing at the time of sentencing. The amount of restitution shall be based on the actual damages sustained by the victim and shall be supported by evidence which shall become a part of the court record. The court shall consider the defendant's earning ability, employment status, financial resources, and family or other legal obligations and shall balance such considerations against the obligation to the victim.

Pursuant to § 29-2281, before restitution can be properly ordered, the trial court must consider: (1) whether restitution should be ordered, (2) the amount of actual damages sustained by the victim of a crime, and (3) the amount of restitution a criminal defendant is capable of paying. *State v. Wells*, 257 Neb. 332, 598 N.W.2d 30 (1999). The language of § 29-2281 and the case law require appropriate sworn documentation to support both the actual damages sustained by the victim and the defendant's ability to pay restitution. *State v. Wells, supra*.

In the present case, the district court did not hold a restitution hearing at sentencing or any time before ordering that Kelley pay restitution. Thus, there was no evidence offered to establish Kelley's ability to pay restitution. A letter Kelley wrote to the sentencing court was included in the presentence investigation report. In it, Kelley indicated that she receives monthly disability benefits, and as such, she would be able to pay $250 per month in restitution. A defendant's statements concerning his or her financial condition, as contained in a presentence investigation report that was prepared in connection with sentencing, are allowable evidence in determining the defendant's ability to pay restitution, under the evidence rule providing that a statement offered against a party is not hearsay if it is the party's own statement. *State v. Holecek, supra*.

However, it is clear from the record that the district court did not meaningfully consider Kelley's earning ability, employment status, financial resources, and family or other legal obligations, nor did the court balance these considerations against the obligation to the victim. This is mandatory under § 29-2281, once the court has decided to order restitution as part of the

defendant's sentence. Although the court ordered restitution in the amount of $5,000 to be paid out of Kelley's bond, it is unclear as to whether, in the sentencing court's opinion, this amount represented the amount the court believed Kelley would be able to pay.

Because the record does not indicate that the court meaningfully considered the factors mandated by § 29-2281, we vacate the district court's order regarding restitution and remand the matter to the district court for such proceedings as are consistent with this opinion and the statutory factors set forth in § 29-2281.

*Excessive Sentence.*

Finally, Kelley argues that the sentence imposed by the district court is excessive and constitutes an abuse of discretion. We find no merit to this argument.

Theft by deception, $1,500 or more was a Class III felony at the time of Kelley's offense. Neb. Rev. Stat. § 28-518 (Supp. 2009). At that time, Class III felonies were punishable by 1 to 20 years' imprisonment, a $25,000 fine, or both. Neb. Rev. Stat. § 28-105 (Supp. 2011). Therefore, Kelley's sentence of 4 to 6 years' imprisonment is within the statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Wofford*, 298 Neb. 412, 904 N.W.2d 649 (2017). When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observations of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life. *Id*.

Kelley argues that the district court failed to meaningfully consider her potential for rehabilitative services, her life circumstances, and the circumstances of the crime. The record indicates that Kelley argued these factors at the sentencing hearing and suggested that a sentence of probation was appropriate. The court, however, observed that Kelley stole money from the retired teachers in the state of Nebraska and did so over an extended period of time. The court was troubled by the fact that Kelley never accepted responsibility for her actions until sentencing, and it characterized Kelley's version of events as "pure fabrication."

The sentence imposed by the district court was on the lower end of the statutory range for the offense. Nothing in the record indicates that the court failed to consider the mitigating factors Kelley highlights or that it did not give adequate weight to such factors when considered in light of the factors cited by the court to justify the sentence. We find no abuse of discretion in the sentence imposed, and we therefore reject this assigned error.

CONCLUSION

We conclude that the statements Kelley made to law enforcement were knowingly, freely, and voluntarily made, and thus, the district court did not err in denying her motion to suppress or

admitting the statements into evidence at trial. We further find no abuse of discretion in the sentence imposed. We do, however, conclude that the court erred in imposing an order of restitution without following the statutory requirements. That portion of the sentencing order is therefore vacated, and we remand the matter for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.