IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. DIVIS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

LARRY L. DIVIS, APPELLANT.

Filed January 14, 2025.    No. A-23-873.

Appeal from the District Court for Colfax County: CHRISTINA M. MARROQUIN, Judge. Affirmed.

Sarah Newell and Megan R. Kielty, of Berry Law Firm, for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Larry L. Divis was convicted by a jury of election falsification. The district court subsequently sentenced Divis to pay a $10,000 fine. Divis appeals from his conviction here. On appeal, he assigns numerous errors, including that the district court erred in instructing the jury and in allowing lay witnesses to testify regarding their opinions about where Divis lived in October 2020. Divis also argues that the evidence was insufficient to support his conviction and that he received ineffective assistance of trial counsel in various respects. For the following reasons set forth below, we affirm.

## II. BACKGROUND

The State filed an information charging Divis with election falsification, a Class IV felony, pursuant to Neb. Rev. Stat. § 32-1502 (Reissue 2016). The charge against Divis stems from him

- 1 -

registering to vote in Colfax County, Nebraska, in anticipation of the November 2020 general election. Specifically, on October 19, 2020, Divis submitted a Nebraska Voter Registration Application in Colfax County. As a part of that application, Divis indicated that his "Current Residence Address" was 186 East Fisk Street in the Village of Richland. He then signed his name under the "Applicant's Oath," which provided as follows:

> To the best of my knowledge and belief, I declare under penalty of election falsification that: (1) I live in the State of Nebraska at the address provided in this application; (2) I have not been convicted of a felony or, if convicted, it has been at least two years since I completed my sentence for the felony, including any parole term; (3) I have not been officially found to be . . . mentally incompetent[]; and (4) I am a citizen of the United States.

The application provides the following warning to registrants: "Any registrant who signs this application knowing that any of the information in the application is false should be guilty of a Class IV felony. . . ."

Evidence adduced at trial revealed that the State believed that at the time Divis registered to vote in Colfax County, he was actually living in Platte County, Nebraska, and thus provided false information on the October 19, 2020, voter registration application. Divis contested the State's allegation and argued that in October 2020, he did, in fact, reside in Colfax County. The exact evidence adduced at trial regarding Divis' living situation in October 2020 is detailed below.

Divis grew up in the village of Richland in Colfax County. His parents owned multiple tracts of land in Richland, which were all located on East Fisk Street and which were grouped by the County Assessor into three parcels. The first parcel, which had an address of 186 East Fisk Street, was zoned as a residential parcel. That parcel contained a residence and some outbuildings. The second and third parcels did not have specific situs addresses, and were zoned as commercial parcels. In 1999, Divis' parents deeded all of their lots to Divis and his brother, Steve Divis, but retained a life estate for themselves. In 2014, Steve deeded his interest in the parcels to Divis, such that Divis became the sole owner of the three parcels. However, Steve continued to live in the residence located at 186 East Fisk Street until his death in January 2022. Divis testified that he also stayed at 186 East Fisk Street "once in a while."

During his testimony, Divis indicated that the parcel directly to the north of 186 East Fisk Street contained an "older shop." The parcel directly north of that contained a "newer shop," which he had built in 2003. According to Divis, that shop also contained living quarters and office space. Divis testified that he had occupied the living quarters at the new shop "for a period of time."

Divis also owns residential property in Columbus, Platte County, Nebraska, which he purchased in June 2005. The address for this residence is 3585 30th Avenue. Divis testified that he bought this residence for his girlfriend of 30 years, Denise Tschantre, and that she lives there full-time. Divis explained that he does go to the Columbus residence often. In fact, by the time of the trial in August 2023, Divis was traveling to the Columbus residence every day to work in the home office there.

Divis has worked for the same employer since 2000. Prior to 2020, Divis traveled a great deal for his employment. However, during and after 2020, Divis has primarily worked online and over the telephone due to the COVID-19 pandemic and its effects on commercial travel. Divis

testified that during 2020, he spent most of his time in Richland and considered himself a resident there. Divis testified that he began attending the monthly Village Board meetings in Richland on a regular basis in 2020.

Michelle Evert, the village clerk for Richland and the zoning administrator, testified at the trial that in September 2020, Divis addressed the board members at the monthly board meeting. He spoke regarding his concerns about revisions the board members had recently adopted to the village's nuisance ordinances. At the October 2020 board meeting, Divis further addressed the board members about the nuisance ordinances. Specifically, he requested that he be granted a special exception to one of the ordinances and be allowed to have unlicensed vehicles on his commercial property. Divis also informed the board members that he did not want the "Village Hall" building to be torn down. Evert testified that Divis told the board members, "There will be blood shed before this building is torn down." Evert further testified that Divis appeared to be angry during the board meetings. Carol Engel, a board member during 2020 similarly testified that when Divis attended the board meetings, "he pretty much took over" with "loud . . . outbursts [and] threats."

After the October 2020 board meeting, Evert overheard Divis express his intention to "vote the board [members] out [of office]." When someone pointed out to Divis that he did not live in Richland and, thus, could not vote there, he responded by saying, "I do, and I will register." When Evert questioned Divis about registering to vote in Richland, he said, "Watch [your] back little girl." During Divis' trial testimony, he denied threatening Evert in any way. Engel testified that as a longtime resident of Richland, she was very familiar with its residents, which numbered somewhere around 30. She testified that Divis did not live in Richland, and, instead, lived in Columbus. The only time Engel observed Divis in Richland was for the board meetings. In particular, Engel testified that she had never seen Divis at 186 East Fisk Street and that this address was Divis' brother's home.

Evert testified that in October 2020, the village board's known address for Divis was the Columbus residence. He received his utility bills for his commercial properties in Richland at the Columbus address and had recently returned a form to Evert indicating his intent to continue receiving his utility bill at the Columbus address. Additionally, an employee of the Loup Power District, which provides electricity to residents of both Platte and Colfax Counties, testified that the electric bill for the Columbus residence was in Divis' name, while the bill for 186 East Fisk Street in Richland was in Steve's name.

Divis explained during his trial testimony that he has all of his mail sent to the Columbus address because that address is listed as his business address and because the mail carrier in Columbus actually delivers mail directly to the residence. He indicated that while he pays all of the bills associated with his Richland properties, Tschantre pays all of the bills associated with the Columbus residence, even if some of those bills are in his name.

An employee of the election commission in Platte County testified that earlier in 2020, Divis had requested an early voting ballot for the May primary election in Platte County. On the written form request, he listed his "current address" as being the house he owns in Columbus. Divis testified that when he requested this early ballot in Platte County, he was actually residing in Richland, in Colfax County. He denied actually utilizing the early ballot he received. Despite Divis' testimony, in November 2020, he was still registered to vote in Platte County. There is no

evidence that he did vote in the November 2020 election there, however. There was documentary evidence indicating that Divis did vote in the November 2020 election in Colfax County.

After hearing all of the evidence, the jury convicted Divis of election falsification. The district court subsequently sentenced Divis to pay a fine of $10,000.

Divis appeals.

## III. ASSIGNMENTS OF ERROR

On appeal, Divis asserts that the district court erred in failing to include a jury instruction which defined the term "domicile" and in allowing certain lay witnesses to testify as to their opinion about whether Divis lived in Richland in October 2020. He also alleges that there was insufficient evidence to support his conviction for election falsification and that he received ineffective assistance of trial counsel in numerous respects. His allegations of ineffective assistance include, that trial counsel failed to (1) research and request additional jury instructions; (2) consistently object to improper opinion testimony; (3) object to evidence of Divis' prior bad acts; (4) object to the admission of exhibit Nos. 5 and 6; (5) make a motion for a change in venue; (6) properly question the potential jurors about their knowledge of the case; (7) call witnesses to testify in his defense; (8) impeach certain testimony of the State's witnesses; and (9) present supportive documentary evidence.

## IV. ANALYSIS

### 1. Jury Instructions

#### (a) Further Background

Jury Instruction No. 6 provided the jury with the elements of election falsification, as charged in the information. One of those elements required that Divis have "intentionally stated a falsehood" when he verified, under oath, the accuracy of the information on his voter registration application. Specifically, the State contended that Divis intentionally stated a falsehood when the application asked him for his "current residence address" and he listed 186 East Fisk Street in Richland. Jury Instruction No. 7 defined "residence" as:

> (1) that place in Nebraska in which a person is actually domiciled, which is the residence of an individual or family, with which a person has a settled connection for the determination of his or her civil status or other legal purposes because it is actually or legally his or her permanent and principal home, and to which, whenever he or she is absent, he or she has the intention of returning, (2) the place in Nebraska where a person has his or her family domiciled even if he or she does business in another place, and (3) if a person is homeless, the county in Nebraska in which the person is living.

At the jury instruction conference, Divis' trial counsel asked the district court to also include a definition of "live" in Jury Instruction No. 7, because the voter registration application signed by Divis asked him to attest that he lives in Nebraska at the address provided. Counsel proposed that "live" be defined for the jurors as "to make one's home." The district court denied counsel's request to include a definition of "live" in Jury Instruction No. 7, finding it would be

confusing for the jury to have different definitions for "residence" and "live." The court also noted its belief that including the definition for "residence" "complies with Nebraska law."

(b) Standard of Review

Whether jury instructions given by a trial court are correct is a question of law. *State v. Mowell*, 267 Neb. 83, 672 N.W.2d 389 (2003). Regarding questions of law, an appellate court is obligated to reach a conclusion independent of determinations reached by the trial court. *Id*. In an appeal based on the claim of an erroneous instruction, the appellant has the burden to show that the questioned instruction was prejudicial to or otherwise adversely affected a substantial right of the appellant. *Id*.

(c) Analysis

In his brief on appeal, Divis now asserts that the district court erred in failing to include a definition of "domicile" in Jury Instruction No. 7. Specifically, Divis asserts that the district court should have instructed the jury that a person establishes his or her domicile by "physical presence in a place in connection with his or her state of mind concerning his or her intent to remain there." Brief for appellant at 22. However, as Divis concedes in his brief to this court, defense counsel did not ask for such a definition to be included in Jury Instruction No. 7. Given Divis' failure to raise this issue below, we review his assertion for plain error.

Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error indicative of a probable miscarriage of justice. *State v. Mowell, supra*. The purpose of the instruction conference is to give the trial court an opportunity to correct any errors made by it. *Id*. Consequently, a party who does not request a desired jury instruction cannot complain on appeal about incomplete instructions. *Id*. Thus, in order to preserve the alleged error, Divis was required to specifically object to that error.

However, as noted, an appellate court always reserves the right to note plain error which was not complained of at trial. *Id*. We have defined plain error as "error of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process." *Id*. at 93, 672 N.W.2d at 398. Here, there is no plain error because the jury instructions provided by the district court correctly stated and defined the elements of election falsification.

Imbedded in the definition of "residence" provided to the jury in Instruction No. 7, is the definition of "domicile:"

> [T]he residence of an individual or family, with which a person has a settled connection for the determination of his or civil status or other legal purposes because it is actually or legally his or her permanent and principal home, and to which, whenever he or she is absent, he or she has the intention of returning.

This definition closely parallels the definition of "domicile" requested by Divis in his brief to this court. It evidences a requirement that a person have both a physical presence in a given location and an intent to make that place a permanent home. As such, providing a separate definition of "domicile" for the jury would have been cumulative and potentially confusing.

Moreover, the definition of residence provided within Jury Instruction No. 7 is taken directly from the statutory definitions of the Election Act set forth in Neb. Rev. Stat. § 32-116

(Reissue 2016). In giving instructions to the jury, it is proper for the court to describe the offense in the language of the statute. *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018). Although the law does not require that a jury instruction track the exact language of the statute, using the specific language of a statute is an effective means of implementing the intent of the Legislature. *Id*. This practice provides the added benefits of easing the process of preparing jury instructions and creating certainty for trial courts that the jury has been provided the essential elements of an offense. *Id*.

There is no prejudicial error necessitating reversal if the jury instructions, read together and taken as a whole, correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence. See *id*. Based upon our review, we find that the district court's jury instructions correctly defined the elements of the offense of election falsification. As such, we find no plain error in the district court's failure to supplement the instructions by separately defining "domicile."

## 2. OPINION TESTIMONY FROM LAY WITNESSES

### (a) Additional Background

During Evert's trial testimony, she indicated that when Divis indicated he wanted to vote the board members out of office after the October 2020 board meeting, someone commented, "[Y]ou don't live here." Evert also indicated that she "knew" Divis did not live in Richland in October 2020. Divis' trial counsel did not object to this testimony.

During Engel's testimony, she similarly testified that Divis lived in Columbus, not in Richland. Counsel did object to this testimony, arguing that the answer invaded the province of the jury to decide where Divis lived. The district court overruled this objection.

Rita Mundil, the election commissioner for Colfax County, testified during the trial that the term "current residence address" on the voter registration application means "where [a person] lives."

On appeal, Divis asserts that the district court improperly allowed Evert, Engel, and Mundil to provide opinion testimony which went to the heart of what the jury was to decide: where Divis lived in October 2020. Upon our review, we find that to the extent Divis properly objected to this opinion testimony, there was no error in the district court's decision to permit the lay witnesses to provide testimony about Divis' living situation.

### (b) Standard of Review

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Anthony*, 316 Neb. 308, 4 N.W.3d 393 (2024). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id*. An appellate court reviews the trial court's conclusions with regard to evidentiary foundation and witness qualification for an abuse of discretion. *Id*. A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id*.

Before we address the substance of Divis' argument about the opinion testimony of lay witnesses, we first address the State's contention that Divis did not object to all of the opinion testimony provided during the trial. Upon our review of the record, we agree with the State's assertion. However, given Divis' additional contention that his trial counsel provided ineffective assistance for failing to consistently object to the opinion testimony, we address the admissibility of all the opinion testimony here. We now turn to the legal framework underlying our analysis of whether the testimony regarding Divis' living situation was admissible.

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. Neb. Rev. Stat. § 27-704 (Reissue 2016). Opinion testimony by a lay witness is permitted only where it is rationally based on the perception of the witness and it is helpful to a clear understanding of his testimony or the determination of a fact in issue. See Neb. Rev. Stat. § 27-701 (Reissue 2016). It is generally admissible where it is necessary and advisable as an aid to the jury, but it should be excluded whenever the point is reached at which the trier of fact is being told that which it is itself entirely equipped to determine. *State v. Kozisek*, 22 Neb. App. 805, 861 N.W.2d 465 (2015). A lay witness' function is to describe what he has observed, and the trier of fact will draw a conclusion from the facts observed and reproduced by the witness. See *id*. In this case, the testimony adduced by the State from Evert, Engel, and Mundil was rationally based on their perceptions and observations, was supported by proper foundation, and it was helpful to the jury.

Evert testified that she was aware that Divis did not live in Colfax County in October 2020 based upon her employment as the village clerk and her work in the Colfax County clerk's office. Her testimony was based upon her personal knowledge of Divis and her familiarity with the records on file with the village of Richland and the county. Notably, she did not testify that Divis intentionally lied on his October 2020 voter registration application. Evert's opinion testimony was within the purview of a lay witness and, thus, was not improper or inadmissible.

Engel testified that she believed that Divis was living in Columbus, and not in Richland, in October 2020. Such opinion testimony was based on Engel's personal knowledge of Divis, her role on the village board, and her familiarity with the small number of Richland residents, having lived there for more than 40 years. Again, Engel did not testify that Divis intentionally lied on his voter registration application. Her testimony was based on sufficient foundation, was rationally based on her perception and observations, and it was helpful to the jury. The testimony was not improper or inadmissible.

Mundil testified about her familiarity with the voter registration process in Colfax County and the requirements for the voter registration application due to her role as the election commissioner. Divis takes issue with Mundil's testimony that if she was asked what "current residence address" means as included on the voter registration application, that she would indicate that it means where a person currently lives. Mundil's testimony in this regard was based upon her perceptions, observations, and unique knowledge as the county's election commissioner. She did not provide any testimony about where Divis lived in October 2020, nor did she suggest in any way that Divis was guilty of election falsification. Her testimony, as that of Evert and Engel, was within the purview of a lay witness and was not improper or inadmissible. Moreover, it is not clear

how Mundil's testimony about the meaning of "current residence address" harmed Divis in any way.

Because the testimony adduced by the State from Evert, Engel, and Mundil was rationally based on their perceptions and observations, was supported by proper foundation, and was helpful to the jury, we find no error in the district court's decision to allow the testimony into evidence.

### 3. SUFFICIENCY OF EVIDENCE

#### (a) Standard of Review

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

#### (b) Analysis

Divis was convicted of election falsification in violation of § 32-1502. On appeal, Divis asserts that there was insufficient evidence presented at trial to support this conviction. Specifically, he alleges that the State failed to prove that he purposefully provided false information on the October 2020 voter registration application. Upon our review of the record, we find the evidence presented was sufficient to establish Divis committed election falsification. As such, we affirm.

Section 32-1502 states as follows:

A person shall be guilty of election falsification if, orally or in writing, he or she purposely states a falsehood under oath lawfully administered or in a statement made under penalty of election falsification (1) as to a material matter relating to an election in a proceeding before a court, tribunal, or public official or (2) in a matter in relation to which an oath or statement under penalty of election falsification is authorized by law, including a statement required for verifying or filing a voter registration application or voting early or a statement required by a new or former resident to enable him or her to vote for President or Vice President of the United States. Any person committing election falsification shall be guilty of a Class IV felony.

In this case, the State alleged that Divis completed a written voter registration application on October 19, 2020, in advance of the November general election. As part of this application, Divis affirmed, pursuant to a written "Applicant's Oath," that he lived in Nebraska at the Richland address provided on the application. At trial, the State contended that the address provided on the application was false, because Divis did not reside in the village of Richland in Colfax County, but instead resided in Columbus, in Platte County. As such, the primary issues presented at trial were where Divis resided when he completed and filed the voter registration application and whether he purposely stated a falsehood regarding his place of residence. If he did not live in

Richland at the time he completed his application, yet stated that he did, the jury could find that he purposefully stated a falsehood under oath.

In his brief on appeal, Divis asserts that he presented uncontested evidence through his testimony that he lived in Richland in October 2020 when he filed the voter registration application. Divis recounts his testimony which explained that during most of 2020, he resided in the living quarters of the new shop on one of his properties located in Richland. And, while the address of that shop was not 186 East Fisk Street, as listed on his application, that was the nearest situs address to the living quarters.

While we recognize that Divis did testify that he resided in Richland in October 2020, we do not agree with his contention on appeal that such evidence of his living situation was "uncontested." Rather, upon our review of the record, we conclude that the State presented a great deal of evidence which suggested that Divis did not live in Richland, but instead continued to reside in Columbus. Such evidence included that throughout 2020, Divis received all of his mail at his Columbus address, including mail associated with his property in Richland. Further, in May 2020 Divis had applied for an early voting ballot in Platte County for the primary election, and requested that it be sent to him at his Columbus address. At that time, he remained registered to vote as a Platte County resident. Other evidence included the testimony of Evert and Engel who indicated that Divis did not reside in the small village of Richland. In particular, Engel testified that the only time she observed Divis to be in Richland in 2020 was during the board meetings and that she never observed him to be at the 186 East Fisk Street address. Moreover, during his own testimony, Divis did not provide any information about when he moved to Richland or whether he still resided there. He did contend that he lived in Richland at the time he applied to vote early in Platte County for the May election and acknowledged that he received his primary election ballot. The evidence demonstrates that his ballot was sent to his Columbus address. He also did not provide any explanation for why he chose to move from the Columbus residence where he resided with his long-time girlfriend to the small living quarters on his commercial property in Richland. He also admitted that he had never informed the Colfax County Assessor that he had built living quarters in the new shop which was zoned "commercial."

We note that as the trier of fact, the jury was the sole judge of the credibility of the witnesses: "The credibility and weight of witness testimony are for the jury to determine, and witness credibility is not to be reassessed on appellate review." *State v. Davis*, 310 Neb. 865, 876, 969 N.W.2d 861, 869 (2022). Given the jury's decision to find Divis guilty of election falsification, it clearly did not find his testimony that he lived in Richland in October 2020 to be credible. And, given the evidence presented by the State which indicated that Divis lied about residing in Richland on his voter registration application, the jury had sufficient evidence to support its decision to convict Divis. Abiding by our standard of review, we conclude that the evidence was sufficient to support Divis' conviction and find no merit to this assignment of error.

### 4. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Divis, represented by new counsel on direct appeal, next asserts that his trial counsel was ineffective in various respects. Before addressing Divis' ineffective assistance of counsel claims, we briefly review the well-established law governing such claims and their resolution on direct appeal.

### (a) Legal Framework

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.*

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Mrza, supra*. The determining factor is whether the record is sufficient to adequately review the question. *Id.*

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018). When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Miller, supra.*

### (b) Standard of Review

Whether a claim of ineffective assistance of counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Npimnee*, 316 Neb. 1, 2 N.W.3d 620 (2024). In reviewing a claim of ineffective assistance of counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

### (c) Failure to Research and Request Additional Jury Instructions

In his first allegation of ineffective assistance of trial counsel, Divis asserts that counsel provided ineffective assistance when he failed to request that the district court provide a definition of "domicile" as a part of the jury's instructions. He explains, "Trial counsel should have requested an instruction that a person establishes their domicile by physical presence in a place in connection with their state of mind concerning their intent to remain there." Brief for appellant at 25. As we discussed above, the district court's use of the statutory definition for "residence" provided in the Election Act essentially included within it the definition of "domicile." Divis argues his counsel

should have asked for it to be separately defined. As such, even if counsel had asked for such a definition, such a request would have been properly denied. Providing a separate definition of "domicile" for the jury would have only served to create cumulative and potentially confusing instructions. As we stated above, the instructions provided to the jury by the district court were a correct statement of the law and were not in any way improper. This ineffective assistance of counsel claim is, as a result, without merit.

### (d) Failure to Consistently Object to Opinion Testimony

Divis alleges that his trial counsel provided ineffective assistance when he failed to consistently object to the testimony of Evert and Engel regarding their opinion about where he lived in October 2020. However, as we detailed above, the opinion testimony of Evert and Engel was properly admitted into evidence. As such, any failure of counsel to object to such testimony did not constitute ineffective assistance. This claim of ineffective assistance of trial counsel is also without merit.

### (e) Failure to Object to Prior Bad Acts Evidence

Divis next alleges that his trial counsel provided ineffective assistance when he failed to object to "inadmissible prior bad acts evidence." Brief for appellant at 35. As a part of this argument, Divis first focuses on testimony provided by Evert and Engel regarding Divis' behavior at village board meetings. Evert testified that Divis told her to "watch [her] back" when she questioned his statement that he lived in Richland and planned to vote there. She also testified that Divis generally behaved angrily at the meetings. Engel testified similarly about Divis' demeanor at the board meetings. She explained that "he pretty much took over" the board meetings with "loud . . . outbursts, [and] threats." Divis alleges that his trial counsel should have objected to this testimony as being irrelevant and inadmissible character evidence.

Contrary to Divis' assertions on appeal, we question whether Evert's and Engel's testimony about Divis' behavior during the village board meetings constitutes "prior bad acts" or inadmissible character evidence as the rules of evidence contemplate. Rather, such testimony appears to be relevant to the circumstances surrounding the charged offense. The State seemingly offered the evidence to demonstrate why Divis might have committed election falsification. The evidence presented demonstrated that he was upset by the requirements and prohibitions of a recently adopted nuisance ordinance along with the board's decision regarding tearing down a building and wanted to be able to change the village's leadership through his vote. However, even if we were to conclude that this evidence does constitute prior bad acts or inadmissible character evidence, we conclude that Divis cannot show he was prejudiced by counsel's failure to object.

Divis' displeasure with some of the village board's decisions was not an issue that was contested at trial. Divis readily admitted that after attending the board meetings, he learned of some things that he thought needed to change in Richland. In fact, that was his rationale for registering to vote in Richland in October 2020. While Evert's and Engel's testimonies regarding Divis' behavior at the board meetings went into more detail than Divis' testimony did, their accounts of the meetings had no bearing on the ultimate issue presented to the jury, which was whether Divis misrepresented where he lived in the voter registration documents he completed in October 2020. Ultimately, considering all of the evidence presented, we cannot say that had the testimony of

Evert and Engel regarding Divis' demeanor been excluded from the trial, that the outcome would have been any different. Accordingly, Divis cannot show he was prejudiced by counsel's failure to object.

The second part of Divis' argument focuses on testimony provided by Nebraska State Patrol Trooper Andrew Bestenlehner. The State called Bestenlehner to testify that he initiated a traffic stop of Divis in April 2021, approximately 6 months after Divis filed his voter registration application, and in the course of the traffic stop observed Divis' driver's license to have the Columbus address listed. However, all Bestenlehner was allowed to testify about was that he initiated a traffic stop of Divis in April 2021 for not having license plates on his vehicle. Following that initial testimony, the district court sustained Divis' relevance objections to the remainder of Bestenlehner's testimony. Thus, the State was unable to adduce any evidence with regard to the location of Divis' residence at that time.

On appeal, Divis asserts that the admission of evidence that he was pulled over for failing to have license plates on his vehicle constituted the admission of prior bad acts evidence that his counsel should have objected to. Again, we conclude that this assertion of ineffective assistance of trial counsel is without merit because Divis cannot show he was prejudiced by counsel's failure to object.

Given the totality of the evidence presented at the trial, we must conclude that even if the evidence of the traffic stop had been excluded, the outcome of the trial would have remained the same. Evidence that Divis committed a minor traffic infraction 6 months after he filed his voter registration application is relatively inconsequential given the other evidence presented at trial. In particular, such evidence was not in any way relevant to the main issue presented to the jury, which was where Divis lived in October 2020. The evidence also did not speak to Divis' credibility as a trial witness. Even if counsel would have objected and the evidence was stricken, there is nothing to indicate that the absence of the evidence would have affected the jury's ultimate verdict. Divis cannot show he was prejudiced by counsel's failure to object to Bestenlehner's testimony.

(f) Failure to Object to Exhibit Nos. 5 and 6

During the trial, the State offered into evidence exhibit Nos. 5 and 6, which were copies of the Richland Village board meeting minutes from September 8, 2020 and October 13, 2020. Exhibit No. 5, the meeting minutes from September 8, reflected that Divis was in attendance at the meeting and "addressed the board about the letter that was sent out to residents & landlords about problem ordinances." Exhibit No. 6, the meeting minutes from October 13, reflected that Divis was in attendance at the meeting and "asked the board why they had not kept the current building up-to-date. He also asked the board to change the ordinance about unlicensed vehicles to be exempt for commercial property." Divis' trial counsel did not object to the admission of exhibit Nos. 5 and 6 during the trial.

On appeal, Divis claims that counsel's failure to object to exhibit Nos. 5 and 6 constituted ineffective assistance because the two exhibits contained inadmissible hearsay, were irrelevant, and were highly prejudicial. In particular, Divis argues that the exhibits painted him in a bad light and "[t]here [was] no legitimate reason these minutes needed to be offered as exhibits." Brief for appellant at 40. Upon our review, we conclude that even if we were to find that trial counsel was

deficient by not objecting to these exhibits, Divis' ineffective assistance of counsel claim would still fail because he cannot show that he was prejudiced by the admission of the exhibits.

As is relevant to the criminal proceedings below, exhibit Nos. 5 and 6 merely demonstrated that Divis attended the September and October village board meetings and that during those meetings he addressed the board about the new nuisance ordinances and the proposal to tear down the current village hall building. Such evidence is cumulative to other evidence presented by both the State and by Divis. During his testimony, Divis indicated that he began attending the village board meetings during the latter half of 2020. He also explained that during those board meetings, he learned about some things he wanted to change in Richland. Similarly, both Evert and Engel testified that Divis attended village board meetings in 2020. They also both testified that Divis was not happy with the new nuisance ordinances or the tearing down of the village hall building and addressed the board about his concerns during the meetings. Divis does not explain how this cumulative evidence harmed him.

Cumulative evidence means evidence tending to prove the same point of which other evidence has been offered. *State v. Prado*, 30 Neb. App. 223, 967 N.W.2d 696 (2021). Generally, erroneous admission of evidence is harmless error and does not require reversal if the evidence is cumulative and other relevant evidence, properly admitted, supports the finding by the trier of fact. *Id*. Because the substance of exhibits Nos. 5 and 6 was cumulative of other properly admitted evidence, their admission constituted harmless error, and Divis is unable to prove he was prejudiced by counsel's failure to object, even if such objection might have been successful.

(g) Failure to Move for Change of Venue

Divis next asserts that his trial counsel provided ineffective assistance in failing to move for a change of venue for the trial. Specifically, he claims that during voir dire, numerous connections between the jurors and the State's witnesses and between the jurors, themselves, existed, and that because of such connections it was impossible to secure a fair and impartial jury in Colfax County. Upon our review, we conclude that this assertion of ineffective assistance of counsel must fail because there is nothing in the record to suggest that had counsel moved for a change in venue such request would have been granted.

Under Nebraska law, all criminal cases shall be tried in the county where the offense was committed, but if it shall appear to the court by affidavits that a fair and impartial trial cannot be had therein, then the court shall transfer the proceeding to any other district or county in the state as determined by the court. *State v. Gonzalez*, 313 Neb. 520, 985 N.W.2d 22 (2023). Absent particular evidence of the community's inability to put on a fair trial, such inability will not be presumed simply because of the community's size and the relationships among its people. *State v. Galindo*, 278 Neb. 599, 774 N.W.2d 190 (2009).

Here, the record reflects that three jurors were struck for cause during voir dire. Juror No. 3 was struck because she was related by marriage to Divis' girlfriend. Juror No. 1 was struck because she was closely related to one of the State's witnesses. Juror No. 7 was struck because she had a professional connection to the criminal proceedings. The record also reflects that there were other jurors who indicated that they had some level of familiarity with the case or had relationships with a witness or with another juror. However, those jurors each indicated, upon direct questioning,

that they could remain impartial and decide the case based only upon the evidence presented at trial, despite their prior knowledge of the case or their relationships.

The law does not require that a juror be totally ignorant of the facts and issues involved in the case; it is sufficient if the juror can lay aside his or her impression or opinions and render a verdict based upon the evidence. *State v. Galindo, supra*. Moreover, the Nebraska Supreme Court has previously indicated that even the mere fact that a prospective juror is personally acquainted with a victim or a victim's family does not automatically disqualify a person from sitting on a criminal jury. *Id*. Only when it appears that they cannot or will not put aside the relationship with the victim and render impartial verdicts based solely on the evidence need jurors be excused for cause. *Id*.

The record before us does not demonstrate that it was impossible to secure a fair and impartial jury in Colfax County, where the offense was committed. Rather, the record shows that the three jurors who had such close connections to the case, to Divis, or to witnesses that they would be unable to set aside those connections, were properly struck and removed from the venire panel. The other jurors all indicated that they could be impartial and decide the case upon the evidence presented to them. Given this record, Divis cannot show that he received ineffective assistance of counsel due to counsel's failure to move for a change in venue. Such motion would have been entirely unsuccessful.

### (h) Failure to Adequately Question Potential Jurors

Divis asserts that his trial counsel provided ineffective assistance when he failed to adequately question four jurors during voir dire who indicated that they had some connection to someone involved in the case. In his brief, Divis suggests seven questions that he believes trial counsel should have asked to the four jurors in order to explore the extent of these jurors' knowledge about the case. Upon our review, we conclude that our record is insufficient to address Divis' assertion. While our record does reflect the court's follow-up questions to the prospective jurors, it does not provide any information about why trial counsel did not ask additional followup questions to the four jurors or what other information counsel may have had about the jurors and their suitability for the jury.

While this claim is sufficiently pled, and would normally be preserved for postconviction review, because Divis was sentenced to pay a fine, rather than to a term of incarceration, an action pursuant to the Nebraska Postconviction Act is not available to him. See *State v. York*, 278 Neb. 306, 770 N.W.2d 614 (2009) (Nebraska Postconviction Act affords relief to prisoners who are in custody, on parole, or on probation in Nebraska under Nebraska sentence).

### (i) Final Three Ineffective Assistance of Counsel Arguments

In Divis' final three assertions of ineffective assistance of trial counsel, he alleges that counsel failed to call certain witnesses, including Tschantre, who would have testified that he did not live in Columbus with her in October 2020, and six other named witnesses, who would have testified that in October 2020, they saw Divis in Richland on a weekly basis; failed to impeach certain witness testimony by calling additional witnesses; and failed to offer into evidence certain documents that were provided to counsel in advance of trial. Upon our review, we conclude that while each of these assertions are sufficiently pled, our record is insufficient to address them on

direct appeal. Our record does not explain to what extent trial counsel had knowledge of the potential witnesses and potential exhibits. If counsel did have knowledge, the record does not espouse why such witnesses were not called to testify or why the documents were not offered into evidence. Without this information, we cannot properly review these claims of ineffective assistance of trial counsel.

As we explained above, normally, such ineffective assistance of trial counsel claims would be preserved for postconviction review. However, because Divis was sentenced to pay a fine only, rather than to a term of incarceration or probation, an action pursuant to the Nebraska Postconviction Act is not available to him. See *State v. York, supra*.

## V. CONCLUSION

Upon our review, we affirm Divis' conviction for election falsification. We further find no merit to his claims of ineffective assistance, except those claims that alleged he should have further questioned certain jurors; failed to call certain witnesses; failed to impeach certain witness testimony; and failed to offer into evidence certain documentary exhibits. Our record is insufficient to review those claims.

AFFIRMED.